UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DAN WITHERS, ET AL.,** | ) | CASE NO.1:11CV2004 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| **CITY OF CLEVELAND, ET AL.,** | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Daniel Zola's Motion for Summary Judgment Based on Qualified Immunity (ECF # 14) and Motion to Stay Discovery (ECF # 16) and Plaintiffs' Motion for Limited Discovery (ECF # 19). For the following reasons, the Court grants, in part, Defendant Zola's Motion for Summary Judgment, grants, in part, Plaintiffs' Motion for Limited Discovery and denies as moot, Defendant's Motion to Stay Discovery.

**Allegations in the Complaint**

According to the Plaintiff's Complaint, on September 30, 2010, three Cleveland Police Officers arrived at the residence of Danny Withers, located at 1148 E. 125th Street, Cleveland,

1

Ohio. The officers possessed an arrest warrant for Danny Withers but did not have a search warrant. The officers entered 1146 E. 125th Street, which was the residence of Withers' paternal grandmother, Ida Withers. The officers ordered Ida to leave the premises, then entered the premises to search for Danny, located him in the basement and fatally shot him. The Complaint alleges that Danny Withers was unarmed at the time of the shooting. The Complaint is brought on behalf of Dan Withers, decedent's father, individually and as Administrator of decedent's estate, and LaVette Carr, decedent's mother.

The Complaint alleges claims for unreasonable seizure, unlawful search, failure to train, supervise, supervisory liability and failure to adopt or maintain official custom and practices, and ratification, all brought under 42 U.S.C. §1983 for violations of Plaintiffs' and decedent's constitutional rights. The Complaint further alleges claims for assault, battery, wrongful death, survivorship and loss of consortium under Ohio state law, and a claim for punitive damages.

**Defendant's Motion for Summary Judgment**

According to Zola's Motion and supporting affidavit, on September 30, 2010, while assigned to the robbery detail at the Second District of the Cleveland Police Department, Zola accompanied Officer Shoulders and Detective Shapiro in carrying out an arrest warrant for Danny Withers. The arrest warrant was issued for Withers due to his alleged role in a bank robbery, where Withers was further alleged to have threatened to blow the head off a bank teller if she gave him a dye pack. Not only does Zola attest he knew of the above allegations prior to carrying out the arrest warrant, he also attests he learned that Withers had a criminal record, which included firearms convictions prior to the events of September 30, 2010.

Upon arriving at 1146-1148 125th Street, the residence of Danny Withers and his

grandmother, Shoulders knocked on the door and a male answered from an upstairs window. Shoulders announced that the three officers were Cleveland Police and asked for Danny Withers. The male in the upstairs window replied that no one by that name resided in the home and then was silent.  Zola attests he and his fellow officers believed the male in the window was Withers. Shoulders continued to knock while calling out until Withers' grandmother Ida appeared at the door.  Zola attests Ida let the police officers in the home, giving them permission to enter.  Upon entering, the officers began searching the three story home for Withers.  According to Zola, Ida told them Withers lived on the third floor and showed the officers the access door to the third floor.  Withers was not found on the third floor.

Before the officers searched the basement, they called for back up to secure the exterior of the house and to deal with a Rottweiler.  Upon the arrival of the back up officers, Zola, Shoulders and Shapiro proceeded downstairs to the basement in search of Withers.  The basement was lit by a single light bulb placed near the bottom of the stairs, while the rest of the basement was completely dark.  While searching the basement, the officers repeatedly called out to Withers, identifying themselves as officers and ordering him to come out.  Withers never responded.  The officers, while searching the dark basement used a tactical technique, switching their flashlights on and off to illuminate the basement intermittently while not giving away the officers' locations in the basement.  In searching the basement, the officers discovered a closet and, using standard police procedure, one officer, Shapiro, opened the door, while Zola checked the closet.  Finding it empty, Zola noticed a second closet.  As they approached the second closet the officers continued to call to Withers to come out.  Using the same search procedures as before, Shoulders opened the door and Zola checked the closet.  When Shoulders opened the

door, Zola described what happened next:

> "the only thing I could see with my flashlight was the silhouette of a figure with an arm coming up from his side in a very quick motion towards me. I was in imminent danger for my life believing that Withers intended to fire a weapon at me. I only had a split second in which to react to the threat posed by Withers. I fired my service weapon once at Withers."

Zola further attested that after shooting Withers he ran to the closet to secure any weapons and Withers. It was then he located a screwdriver at Withers feet. Shoulders then immediately called for EMS.

**Plaintiffs' Motion for Limited Discovery and Opposition to Defendant's Motion**

Plaintiffs move the Court for limited discovery under Fed. R. Civ. P. 56(d), contending that without limited discovery they will be unable to present facts sufficient to justify their opposition. At the same time, Plaintiffs have filed an Opposition to Defendant Zola's Summary Judgment Motion, again requesting discovery, but also contending that the evidence, as presented and read in light most favorable to Plaintiffs, demonstrates that Zola violated decedents constitutional rights.

According to Plaintiffs, the officers reported that the perimeter of the house had been secured therefore, there was no danger that Withers would flee the home. Zola also reported that he never saw or looked at Withers hands before he shot Withers. If he had, he would have seen that Withers was not holding a gun. Plaintiffs also assert that neither officer with Zola fired their weapons. In addition, Plaintiffs cite to the affidavit testimony of Dennis Daniel, a neighbor, who allegedly overheard the officers speaking after the shooting. According to Daniel an officer said, "we said 'get down fucker, get down fucker" before shooting Withers. This contrasts with Zola's

4

affidavit wherein he states he had a split-second to make the decision to shoot.

Lastly, Plaintiffs contend the officers had no right to enter into the premises to search for Withers. They only had an arrest warrant and no exception applies that would permit the officers to engage in a warrantless search. Contrary to Zola's affidavit, which contends Withers' grandmother Ida gave them permission to enter, Ida's own affidavit expressly states she did not give the officers permission to enter the home.

Regarding Plaintiffs' Motion for Limited Discovery, Plaintiffs contend they only possess those documents required to be produced under Fed. R. Civ. P 26(a)(1), which include the UDFIT (Use of Deadly Force Investigation Team) report. Plaintiffs ask for additional discovery in order to respond to Defendant's Motion.

Defendant opposes Plaintiffs' Motion for Limited Discovery, contending that Plaintiffs have failed to show by way of affidavit, what they expect the discovery they request will show. Defendant also contends Plaintiffs have failed to proffer any evidence demonstrating any issues of fact sufficient to warrant additional discovery or sufficient to oppose Defendant Zola's Motion for Summary Judgment.

## LAW AND ANALYSIS

### Summary Judgment Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in

the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347. This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Qualified Immunity**

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) "Qualified immunity 'is an affirmative defense that must be pleaded by a defendant official.'" *Harlow*, 457 U.S. 800, 815 (1982). But qualified immunity "is an immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227

(1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Immunity ordinarily should be decided by the court long before trial." *Hunter* at 228 (1991) (citing *Mitchell* at 527-29). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell* at 526 (citing *Harlow* at 818). The issue of qualified immunity must be addressed at the earliest possible point in the litigation. *Saucier v. Katz,* 533 U.S. 194, 200-201 (2001); *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). The Supreme Court has stated that, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed. " *Harlow* 457 U.S. at 819. A district court should resolve immunity question before permitting discovery; Crawford-El v. Britton, 523 U.S. 574, 598 (1998). Indeed, one of the core purposes of the immunity is to shield officials from "the burdens of broad-reaching discovery." Crawford-El, 523 U.S. at 588 (quoting Harlow, 457 U.S. at 817-818).

The analysis of a qualified immunity claim is distinct from the merits of the underlying claim itself. *Saucier,* 533 U.S. at 204; *Dunigan v. Noble,* 390 F.3d 486, 491 n.5 (6th Cir. 2004). Qualified immunity is a purely legal question which must be determined early in the proceedings. *Saucier,* 533 U.S. at 200; *Siegert,* 500 U.S. at 232.

The defendants bear the initial burden of coming forward with facts which suggest that they were acting within the scope of their discretionary authority at the time in question. *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir. 1992). The burden then shifts to the plaintiff to show that the defendants are not entitled to qualified immunity. *Untalan v. City of Lorain,* 430 F.3d 312, 314 (6th Cir. 2005); *Cartwright v. City of Marine City,* 336 F.3d 487, 490-491 (6th Cir. 2003).

There is not an immunity from all discovery: "limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity." Crawford-El, 523 U.S. at 593 n.14. First, the Court must determine whether the actions that the plaintiffs allege the officer to have taken are "actions that a reasonable officer could have believed lawful." Anderson, 483 U.S. at 646 n.6. If so, the officer is entitled to dismissal prior to discovery. If they are not, . . . and if the actions [the officer] claims he took are different from those [the plaintiffs] allege (and are actions that a reasonable officer could have believed lawful), then discovery may be necessary before [the officer's] motion for summary judgment on qualified immunity grounds can be resolved. Of course, any such discovery should be tailored specifically to the question of [the officer's] qualified immunity. Anderson, 483 U.S. at 646 n.6. In such a situation, the court "should give priority to discovery concerning issues that bear upon the qualified immunity defense, such as the actions that the official actually took." Crawford-El, 523 U.S. at 600. This initial inquiry concerning the possibility of discovery on the question of qualified immunity is similar to the first step, the "threshold question," in the qualified immunity analysis itself: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201 (emphasis added). See, e.g., Crawford-El, 523 U.S. at 598 (court must determine whether, assuming truth of plaintiff's allegations, official's conduct violated clearly established law). If no constitutional right would have been violated, there is no need to further inquire with regard to

qualified immunity. *Id*. If, on the other hand, a violation could be established, the next step is to ask whether the right was a clearly established right of which a reasonable person would have known. *Id*.

>Fed R. Civ. P. 56(d) reads:
>
>(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
>**(1)** defer considering the motion or deny it;
>
>**(2)** allow time to obtain affidavits or declarations or to take discovery; or
>
>**(3)** issue any other appropriate order.

Here, Plaintiffs' move the Court for an order permitting discovery before ruling on Defendant Zola's Motion for Summary Judgment based on Qualified Immunity. "The burden is on the party seeking additional discovery to demonstrate why such discovery is necessary." *Summers v. Leis* 368 F.3d 881, 887 (6th Cir. 2004). "Bare allegations or vague assertions of the need for discovery are not enough." *Id.* (citations omitted). Rather, a party requesting discovery under Rule 56(d) must assert with "some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment." *Id. quoting Simmons Oil Corp. v. Tesoro Petroleum Corp.,* 86 F.3d 1138, 1144 (Fed.Cir.1996).

In support of their 56(d) Motion, Plaintiffs attach the affidavit of Plaintiffs' counsel S.

Michael Lear, wherein Lear requests the following discovery:[1]

> Requests for Production directed to Zola and/or the City of Cleveland to obtain any and all documents relative to the underlying crime for which the arrest warrant was issued and all documentation relative to any prior criminal arrest and/or conviction history of Danny Withers, and any and all documentation relative to police procedure/protocol regarding execution of arrest warrants and use of deadly force;

> Deposition of Zola, Shapiro and Shoulders regarding information of which they were aware regarding the circumstances surrounding the arrest warrant of Withers immediately prior to and at the moment of the shooting, entry onto the premises and the search of the premises;

> Requests for Production as to any and all defenses to state tort law claims.

> Lear's affidavit attests:

> Plaintiffs will be unable to present facts essential to justify Plaintiffs' opposition to Defendant Zola's Motion for Summary Judgment unless Plaintiffs are permitted an opportunity to engage in limited discovery to address the issues which will be relevant to oppose Defendant Zola's Motion for Summary Judgment due to the fact that there are no surviving witnesses to the shooting of Danny Withers other than: 1] Defendant Zola; 2] Sgt. Shoulders; and 3) Det. Shapiro;

While the above requested discovery materials seek everything pertinent to the case in general and would defeat the purpose of qualified immunity, the Court finds some limited discovery is warranted due to evidence produced by Plaintiffs which indicate some conflicts with Defendant's version of events. Plaintiffs have offered the affidavits from Withers' father stating they cannot oppose Defendant's Motion without discovery, Ida Mae Withers' affidavit, which describes events leading to the officers' entry into the residence, and directly refutes Zola's

---

[1] In fact, Lear's affidavit was not attached to Plaintiff's 56(d) Motion, rather it was attached to Plaintiff's Motion for Limited Discovery and Motion to Defer Ruling on Defendant's Motion for Summary Judgment. However, the Court will consider it part of the 56(d) Motion since the Motion for Limited Discovery requests deferring the ruling on Defendant's Motion for Summary Judgment.

statement that she let officers in the home, and the affidavit of Dennis Daniel, wherein he attests he was present outside the Withers' home on the night of the shooting. Daniel attests that after Withers' was taken away by paramedics, he overheard two officers discussing what happened in the home. According to Daniel an officer said, "we said 'get down fucker, get down fucker," before shooting Withers. Plaintiffs allege this contrasts with Zola's affidavit, wherein he states he had a split-second to make the decision to shoot.

Defendant moves to strike the Daniel affidavit as impermissible hearsay. Plaintiffs oppose the Motion to Strike the Affidavit, contending the statements of the officers are not hearsay under Fed. R. Evid 803(1), Present Sense Impression and 803(2), Excited Utterance. Also Plaintiff contends the affidavit reveals a statement by a party opponent under Fed. R. 801(d)(2)(A), which would not be hearsay.

The Court finds the affidavit of Daniel presents a question as to the identity of the speaker. At line 9, it reads, "The "officer" stated that he was in the basement and when he saw him [Danny Withers] "we said 'get down fucker, get down fucker'" and then he shot." Taking this statement on its face, the speaker would be Zola since it is undisputed that Zola was the lone shooter. Thus, it would be the statement of a party opponent. See *Stalbosky v. Belew,* 205 F.3d 890, 894 (6th Cir.2000) ("a party's statement is admissible as non-hearsay only if it is offered against that party.") However, at line 12 of Daniel's affidavit, while speaking directly to the same officer described in line 9, Daniels states, "I said, I heard what you all were talking about, he didn't have a reason to shoot." This line would seem to indicate the shooter was someone other than the speaker in line 9. In this circumstance, the statement would not have been Zola's statement but another witness, and thus, would not satisfy Fed. R. Evid. 801(2)(A). *Canter v.*

*Hardy* 188 F.Supp.2d 773, 783 (E.D.Mich.,2002), citing United States v. Sauza-Martinez, 217 F.3d 754, 760 (9th Cir.2000) ("finding that one defendant's statements were not admissible as party-admissions against co-defendant.").

Here, Daniel's affidavit questionably presents a dispute with Zola's affidavit testimony, wherein Zola attests he had a "split-second in which to react to the threat posed by Withers." While the Court makes no statement on the effect of Daniel's affidavit on the ultimate issue of qualified immunity, for purposes of determining whether limited discovery is warranted, and construing all allegations and inferences in Plaintiffs' favor, the Court finds it provides additional evidence to support some limited discovery.

Furthermore, when a defendant moves for summary judgment on qualified immunity and Plaintiff moves for limited discovery before it may respond, the Court must consider the *allegations* in Plaintiff's Complaint. "Taken in the light most favorable to the party asserting the injury, do the *facts alleged* show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201 (emphasis added). See also, *Hagan v. City of Cleveland*, No. 1:06Cv 2507, 2007 WL 893825, *5 (N.D. Ohio March 22, 2007) citing *Crawford-El,* 523 U.S. at 598 ("court must determine whether, assuming truth of plaintiff's allegations, official's conduct violated clearly established law").

The Complaint alleges Withers was unarmed, standing in a wooden built-out closet, and posed no risk to the safety of the officers. The officers secured the house so there was no risk of flight by Withers. It is undisputed that the Fourth Amendment provides a police officer may not seize an unarmed, non-dangerous suspect by killing him, and the Supreme Court has held that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of

12

the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). In cases where a seizure involves the use of deadly force, the intrusiveness is "unmatched and irrevocable." *Id*. "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id* at 11.

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Id.* at 11-12.

Thus, the issue of whether Zola had probable cause to believe Withers posed a threat of serious physical harm is a matter in dispute based on Zola's affidavit, versus the allegations contained in Plaintiff's Complaint. At this stage in the proceedings, the Court finds limited discovery is necessary before Plaintiffs respond to Defendant's Motion for Qualified Immunity on the issue of excessive force. This is especially important given the Sixth Circuit's admonishment that courts pay particular care when there is presented only one version of the facts; the officer's. "[W]here an officer defendant is the only witness left alive to testify, the award of summary judgment to the defense in a deadly force case must be decided with particular care." *Burnette v. Gee,* 137 Fed. Appx. 806, 809 (6th Cir.2005).

**Unlawful Search**

The Fourth Amendment prohibits "unreasonable searches and seizures," and "the arrest of a person is quintessentially a seizure." *Payton v. New York,* 445 U.S. 573, 585 (1980).

"Moreover, the Supreme Court has explained that because 'the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed[,] ... [i]t is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *El Bey v. Roop* 530 F.3d 407, 414 -415 (6th Cir.,2008) *quoting Payton,* at 585–86. "Thus, unless one of the 'few well-defined and carefully circumscribed circumstances' justifying a warrantless entry exists, the Fourth Amendment reasonableness standard "generally requires that police obtain a warrant based upon a judicial determination of probable cause prior to entering a home." *El Bey,* at 414-15, quoting *Thacker v. City of Columbus,* 328 F.3d 244, 252 (6th Cir.2003).

Plaintiffs' Complaint alleges that the officers who entered Withers' residence without a search warrant "violated clearly established constitutional rights of Danny Withers..." The Complaint alleges decedent resided at 1148 E. 125th Street. (Complaint ¶ 3). This is supported by the affidavit of Dan Withers, decedent's father, who attests that Withers' resided at 1148 E 125th Street at the time of the shooting. (Dan Withers aff. ¶ 7). Later, the Complaint alleges Withers resided at 1146 E. 125th Street. (Complaint at 17). Decedent's grandmother, Ida Mae Withers, attests in her affidavit that decedent resided with her at 1146-1148 E. 125th Street at the time of the shooting. (Ida Mae Withers aff. ¶ 5).

Defendant Zola attests that the officers went to 1146 E. 125th Street to effect the arrest warrant for decedent because Withers was known to reside there. Zola further attests when they knocked on the door a male answered out an upstairs window and stated that Withers did not reside in the home. Zola attests he believed the male who responded was Withers. The parties dispute whether the officers entered the structure with or without the permission of Ida Mae

14

Withers, with both Zola and Ida Mae Withers offering contradictory affidavits.  Regardless of whether Ida Mae Withers gave the officers permission to enter the structure, The United States Supreme Court has held that police officers, when executing a properly supported arrest warrant, have the authority to enter the dwelling where the suspect lives when they have reason to believe the person is inside.  "Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."  *Payton v. New York* 445 U.S. 573, 603 (1980).  It is uncontested that Withers' resided at 1146-1148 E. 125th Street and that the officers knew, prior to arriving at the house, that Withers resided there.  Moreover, the officers had reason to believe the man who answered from an upstairs window was Withers as supported by the uncontested testimony of Zola.  Furthermore, it was reasonable for the officers to believe Withers was in the house when the man denied anyone by the name of Danny Withers lived in the house and then disappeared.  When the officers continued to knock on the door asking for Withers, the grandmother attests she asked "what Dan" before opening the door.  Thus, it was reasonable for the officers to conclude the male who denied anyone by that name lived there, was deceptive.  Also, Zola attests he knew of Withers' criminal record, which reflects 1148 E. 125th Street as his address.  Finally, the officers were executing a warrant for Withers' arrest for a bank robbery wherein Withers allegedly threatened to shoot the teller if she gave him a dye pack.

In *El Bey*, the Sixth Circuit elaborated on the United States Supreme Court holding in *Payton* saying, "an arrest warrant is sufficient to enter a residence if the officers, by looking at common sense factors and evaluating the totality of the circumstances, establish a reasonable belief that the subject of the arrest warrant is within the residence at that time." 530 F.3d at 416,

15

quoting *United States v. Pruitt,* 458 F.3d 477, 483 (6th Cir.2006). Based on the foregoing, it was reasonable for the officers to believe Withers resided at 1146-1148 E. 125th Street and was within the residence at the time they executed the arrest warrant. Therefore, Withers' Fourth Amendment rights were not violated when the officers entered the residence.

Defendant also moves for summary judgment on Plaintiff Dan Withers' and Lavette Carr's alleged claim for unlawful search and seizure in violation of their Fourth Amendment rights. The Court finds Dan Withers and Lavette Carr have not made a claim for a violation of their Fourth Amendment rights to be free from unlawful searches and seizures. The Complaint speaks only of a violation of Danny Withers' Fourth Amendment right. However, insofar as Plaintiffs Dan Withers and Lavette Carr assert a Fourth Amendment cause of action for unlawful search and seizure, they lack standing to assert such a claim, as neither offers evidence they were on the premises at the time of the shooting nor do they assert a property interest in the premises or claim a privacy interest in the property. See *U.S. v. King* 227 F.3d 732, 749 ( Sixth Cir. 2000) (Factors to consider include " person's proprietary or possessory interest in the place to be searched or item to be seized," and "whether the defendant has the right to exclude others from the place in question; whether he has taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free from governmental intrusion; and whether he was legitimately on the premises.") Therefore, the Court grants Defendant Zola's Motion on Plaintiffs' claim of unlawful search, finding no Plaintiff suffered a Fourth Amendment violation for unlawful search.

For the foregoing reasons, the Court grants Plaintiffs' Rule 56(d) Motion for Limited Discovery. Plaintiffs may depose Officer Zola, Officer Shoulders and Detective Shapiro ***or***

16

Plaintiffs may serve a total of fifteen interrogatories for all three officers.  Plaintiffs may choose depositions or interrogatories but may not mix and match some depositions and some interrogatories.  They must choose one or the other for all the officers.  If Plaintiffs choose to depose the officers, the depositions shall be limited to no more than one hour each and shall be limited to the events immediately preceding and at the time of the shooting.  Plaintiffs may also question the above named officers on the information they possessed about Withers at the time they attempted to execute the arrest warrant.   The depositions shall be completed within thirty days of the date of this Order.   Likewise, if Plaintiffs' choose interrogatories, they must be served within fifteen days of the date of this Order and answered within fifteen days thereafter.  Plaintiffs shall file their Opposition to Defendant's Motion no later than November 12, 2012, and Defendant shall be permitted to file a Reply no later than November 26, 2012.

The Court grants, in part, Zola's Motion for Summary Judgment on Plaintiffs' claim for unlawful search and withholds ruling on Defendant's Motion regarding Plaintiffs' claim of excessive force until the above described discovery is completed and the parties submit their Brief and Reply.  The Court grants, in part Plaintiffs' Motion for Limited Discovery and denies, as moot, Plaintiffs' Motion to Stay Discovery as described above.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  September 27, 2012