IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAN WITHERS, et al., | ) | Case No.: 1:11-CV-2004 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER BOYKO |
| | ) | |
| vs. | ) | **PLAINTIFFS' TRIAL BRIEF** |
| | ) | |
| CITY OF CLEVELAND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiffs, through counsel, respectfully submits their Trial Brief to the Court, pursuant to the Court's June 28, 2017 Civil Trial Order (ECF 76).[1]

## I.  SYNOPSIS OF FACTS

On September 30, 2010 Cleveland Police Officers Zola, Sergeant Shoulders, and Detective Shapiro entered Danny Withers' residence to execute an arrest warrant on him.  The three officers entered the residence and subsequently cleared and secured the house's three floors, but were unable to locate Danny Withers.  The officers then waited for additional officers to arrive on scene to secure the perimeter of the residence before attempting to enter the basement to continue looking for Danny Withers.

Sergeant Shoulders allegedly yelled from the top of the basement stairs for Danny Withers to come out.  After not hearing a response and/or any movement, the officers decided to

---

[1] Plaintiffs note that while the Civil Trial Order requires the parties to submit proposed jury instructions, a joint preliminary statement, and stipulations of fact at the time of filing their Trial Briefs, the parties disagree on the date that said materials are required to be filed.  Plaintiffs are of the position that the materials must be filed by 11:59 p.m. on July 29, 2018 in order to be filed 14 days before trial.  Counsel for the Defendants believe that the materials can be filed by 11:59 on July 30, 2018.  Plaintiffs' counsel emailed Defense counsel a draft of proposed jury instructions and a draft of a preliminary statement on July 28, 2018.  Defense counsel has indicated that they will respond to Plaintiffs drafts on July 30, 2018.  Defense counsel has yet to submit any proposed jury instructions to Plaintiffs' counsel.

enter the basement.  Sergeant Shoulders was the first officer to enter the basement and had his gun in one hand and flashlight in the other.  Sergeant Shoulders could "see everything [he] needed to see" in both the northern part and the southern part of the basement while providing cover to Detective Shapiro and Officer Zola. Detective Shapiro did not need to turn on his flashlight until he was halfway into the basement.

Sergeant Shoulders recalled the officers continuing to yell for Danny Withers "to just come out, wherever you're at."  Officer Zola also recalled that the officers repeatedly ordered Withers to "show us your hands" as they searched the basement in the moments before the shooting.

The officers observed two closets in the basement, one on the south side and one on the north side.  After Detective Shapiro cleared the closet on the south side of the basement, Sergeant Shoulders positioned himself to open the closet on the north side.  With the exception of a northeast side door, the officers had cleared the entire residence by the time they got to this last closet in the basement.

The officers took the time to get into tactical positions as Sergeant Shoulders prepared to open the closet door.  Sergeant Shoulders stood by the north closet door and with his firearm in his right hand.  Sergeant Shoulders advised Officer Zola that he was going to open the closet door so that Officer Zola could "stand back in the event that somebody should jump out or something should happen."  Detective Shapiro was positioned off to the side and kept his weapon down at his side, but shined his flashlight towards the closet door.

Officer Zola had his flashlight trained on the closet door from eight to ten feet away so that he could illuminate the inside of the closet when Sergeant Shoulders opened the door.  When

2

Sergeant Shoulders slowly pulled the door open with his left hand, he saw a hand "flash up" and heard a shot fired.  Officer Zola fired the shot.  Sergeant Shoulders did not see a weapon in Danny Withers' hand nor did he observe Danny Withers attempt to step out of the closet area at the time Officer Zola made the decision to shoot and kill Danny Withers.  Sergeant Shoulders recalled that when Danny Withers' hand went up, Officer Zola shot him "instantly", it happened "that quick".  Sergeant Shoulders recalled that Officer Zola shot so quick that there was not enough time to recognize who the person was in the closet and/or whether that that person even had a weapon in his hand.  Despite seeing Danny Withers' hand "flash up", Sergeant Shoulders did not feel threatened enough to shoot his weapon.

Detective Shapiro did not see anything within the closet before he heard Officer Zola fire his weapon.  Detective Shapiro recalled Sergeant Shoulders opening the closet door and hearing a pop.  When asked "did you see any movement motion whatsoever from the closet area before you heard the shot", Detective Shapiro testified "I didn't.  Like, I said, it happened so fast." Detective Shapiro also admitted that Danny Withers' raising his hands would be consistent with surrendering.  Thus, neither Sergeant Shoulders nor Detective Shapiro saw any movement from Danny Withers that would justify the use of deadly force.

 Officer Zola did not observe anything in Danny Withers' hands when Sergeant Shoulders opened the north closet door, but decided to use deadly force because he saw Danny Withers' right arm "go up, real fast".  Officer Zola conceded that prior to shooting Danny Withers, he had commanded him to show his hands and to come out which would have required Danny Withers to move.  Officer Zola also admitted that at the time he used deadly force, he was not even sure whether the person he fired at was Danny Withers as all he could see was a

silhouette of a person.  Officer Zola described the amount of time that passed between seeing Danny Withers' arm move to deciding to shoot Danny Withers as "less than a split-second." Had Officer Zola waited a little bit longer to shoot, he would have been able to see whether Danny Withers had anything in his hand.  Officers did not find a firearm during a search of the basement after Danny Withers was killed.

As numerous law enforcement agents and law enforcement vehicles responded to the Withers' residence after the shooting, an individual by the name of Dennis Daniel stood in the front yard area of the residence.  While he was standing in the front yard, Dennis Daniel overheard an officer tell a "superior officer" that when the officers saw Danny Withers in the basement, "we said 'get down fucker, get down fucker'" and then shot.  Dennis Daniel overheard the officer who was explaining what happened admit that he was the officer who shot and killed Danny Withers.

The unidentified officer's statement outside the Withers' residence that "we said 'get down fucker, get down fucker'" and then fired at Danny Withers contradicts the defendant officers' deposition testimony that Officer Zola shot Withers "instantly", "so fast", and/or "less than a split second" after Sergeant Shoulders opened the closet door.

Danny Withers was only twenty-one years old when he was killed by Officer Zola.  His future was cut short, never to reach its full potential, and his parents were deprived of their only child.

## II.  LEGAL AUTHORITY

Plaintiffs' claims in their First Amended Complaint that currently remain pending are:

1. Unreasonable seizure by the use of unjustified deadly force by Defendant Officer Daniel Zola in violation of the Fourth and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. § 1983;

2. The City of Cleveland's Failure to Train and/or Supervise Defendant Officer Daniel Zola, in violation of 42 U.S.C. § 1983;

3. The City of Cleveland's Supervisory Liability for encouraging, authorizing, approving, and/or knowingly acquiescing to Defendant Officer Daniel Zola's use of unjustified deadly force, in violation of 42 U.S.C. § 1983;

4. The City of Cleveland's Municipal Liability for implementing, creating, authorizing, executing, and/or maintaining official policies, customs, and/or practices relative to the use of deadly force; failures to conduct thorough internal affairs investigations, and/or failures to discipline officers for improper and/or unjustified use of force which directly and proximately caused and/or lead to Defendant Officer Daniel Zola's use of unjustified deadly force on Danny Withers, in violation of 42 U.S.C. § 1983;

5. The City of Cleveland's Municipal Liability for ratifying Defendant Officer Daniel Zola's use of deadly force on Danny Withers;

6. State law assault against Defendant Officer Daniel Zola;

7. State law battery against Defendant Officer Daniel Zola;

8. Wrongful death against Defendant Officer Daniel Zola and Defendant City of Cleveland;

9. Survivorship action against Defendant Officer Daniel Zola and Defendant City of Cleveland;

10. Parental loss of consortium against Defendant Officer Daniel Zola and Defendant City of Cleveland; and

11. Punitive damages against Defendant Zola.

**A. Objectively Unreasonable Use of Deadly Force**

Defendant Zola's use of deadly force against Danny Withers was objectively

unreasonable and in violation of Danny Withers' constitutional rights.

5

An officer's use of deadly force is subject to the objective reasonableness standard of the Fourth Amendment.  Determining reasonableness under the Fourth Amendment requires balancing the nature and quality of the intrusion on an individual's interest against the government's interests, and a determination of whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him.  *Graham v. Connor*, 490 U.S. 386, 396-397 (1989).  This determination rests upon "whether the totality of the circumstances justifies a particular sort of seizure."  *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006). "The Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances, and subjective concepts . . . have no proper place in that inquiry."  *Graham*, 490 U.S. at 399.

An objectively reasonable use of deadly force requires an immediate threat of danger or serious physical harm.  This threat must amount to more than mere guesswork.  Instead, an officer needs "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others" in order to use deadly force.  *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985).  *See also Chappell v. City of Cleveland*, 585 F.3d 901, 908 (6th Cir. 2009); *Jones v. Sandusky*, 541 Fed. Appx. 653, 663, 2013 U.S. App. LEXIS 23137 (6th Cir. 2013); *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 487 (6th Cir. 2007)("[A]n officer may use deadly force whenever he or she, in the face of a rapidly evolving situation, has probable cause to believe that a suspect poses a serious physical threat either to the police or members of the public.").

Though the "objective reasonableness" standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances," (*see*, e.g., *Simmonds v. Genesee County,* 682 F.3d 438, 445 (6th Cir. 2012),

6

citing *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002)), "only in rare instances may an officer seize a suspect by use of deadly force." *Whitlow v. City of Louisville*, 39 Fed. Appx. 297, 2002 WL 1455317, at *5 (6th Cir. 2002).

It is critically important that the Fourth Amendment "prohibits a police officer's use of deadly force to seize an unarmed, non-dangerous suspect." *Sample v. Bailey*, 409 F.3d 689, 696 (6th Cir. 2005).  Further, an individual's failure to comply with officer commands to show his hands and resisting an officer's attempts to seize him are not actions that automatically pose a danger of serious physical harm, and therefore, do not justify use of deadly force.  For example, as the Supreme Court stated in *Garner*, *supra*, regarding fleeing felons, "[i]t is not better that all felony suspect die than that they escape.  Where the suspect poses no immediate threat to the officer and not threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id*. at 11.  *See also*, e.g., *Majors v. City of Detroit*, Civil Action No. 07-11330, 2009 U.S. Dist. LEXIS 66206 (E.D. Mich. July 31, 2009) at *18 (Use of deadly force is unconstitutional where, even though suspect had earlier fled from police, when confronted by the police after his taxis crashed, his gestures were not threatening; he did not hold or possess a gun, weapon, or other object; and he never held or pointed a gun).

Instead, an individual must actually engage in conduct that demonstrates this immediate threat, revealing a perceived serious threat of physical harm to the officer or others in the area from the perspective of a reasonable officer, in order for the deadly force to be justified.  *See*, e.g., *Boyd v. Baeppler*, 215 F.3d 594, 604 (6th Cir. 2000)(upholding qualified immunity for police officers who used deadly force against a suspect who had a gun in his hand and who pointed it at officers and others); *Bell v. City of East Cleveland*, 1997 U.S. App. LEXIS 28738,

7

No. 96-3801, 1997 WL 640116, at *3 (6th Cir. Oct. 14, 1997)(upholding qualified immunity for a police officer who shot and killed a boy who pointed a toy gun at the officer); *Rhodes v. McDannel,* 945 F.2d 117, 120 (6th Cir. 1991)(upholding qualified immunity for a police officer who shot and killed a homeowner who approached police officers with a raised machete in his hand and ignored repeated warnings to drop the weapon), *cert. denied*, 502 U.S. 1032, 116 L. Ed. 2d 777, 112 S. Ct. 872 (1992).

Even a "rapidly developing situation . . . 'does not by itself legitimize the use of deadly force." *Ward v. County of Cuyahoga*, 721 F. Supp. 2d 677, 690 (N.D. Ohio June 29, 2010), citing *Chappell v. City of Clevleand*, 585 F.3d 901, 910 (6th Cir. 2009).  In *Ward*, even though the suspect was "standing at the threshold of the door at the time he opened it, may have been close enough to the end of [the officer's] weapon to touch it […], this fact without more is not enough to find that Ward posed an immediate threat." *Id*.  Simply possessing – or, in Danny Withers' case, possibly being in the proximity of – a weapon is simply <u>not</u> enough to justify the use of deadly force.  In *Bouggess v. Mattingly*, 482 F.3d 886; 2007 U.S. App. LEXIS 8614 (6th Cir. 2007), despite "uncontroverted evidence of serious danger to officers stemming from the suspect's clear possession of a weapon, his recent firing of his weapon, and his threatening language toward the police," these events did not dictate the conclusion that the suspect was threatening at that very moment he was shot.  This finding precluded qualified immunity for defendant officers because, without being threatening at that very moment he was shot, the suspect's Fourth Amendment rights were violated by the officer's use of deadly force.  *Id*. at 895, citing *Dickerson v. McClellan*, 101 F.3d 1151, 1162 (6th Cir. 1996).  *See also*, e.g., *Curnow v. Ridgecrest Police*, 952 F.2d 321, 324-25 (9th Cir. 1991)(holding that deadly force was

unreasonable where the suspect possessed a gun but was not pointing it at the officers and was not facing the officers when they shot); *Smith v. Cupp*, 430 F.3d 766, 775 (6th Cir. 2005)(holding that even when a suspect is in possession of a dangerous weapon – the weapon being a moving vehicle – which he could have used to injure or kill the officer, the suspect was not threatening the lives of those around him at the moment he was shot; therefore he did not present a serious threat of physical harm, and the use of deadly force against him would be objectively unreasonable).

The facts in this case are devoid of any information that would <u>objectively</u> lead a <u>reasonable</u> officer to fear for his or others' safety.  *See*, e.g., *Yates v. City of Cleveland*, 941 F.2d 444, 447-448 (6th Cir. 1991).  None of the officers observed Danny Withers with anything in his hands at the time Officer Zola used deadly force.  Officer Zola also admitted that at the time he used deadly force, he was not even sure whether the person he fired at was Danny Withers as all he could see was a silhouette of a person.  Officer Zola's decision to use deadly force "less than a split-second" after allegedly seeing the arm of a person he believed to be Danny Withers move in an upward direction is objectively unreasonable and was in violation of Danny Withers' constitutional rights.

### B.  Qualified Immunity

Defendant Zola is not entitled to qualified immunity.  A police officer is entitled to qualified immunity on a § 1983 claim, thus shielding him from liability for civil damages, if he is "performing discretionary functions" and his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Pursuant to *Saucier v. Katz*, 533 U.S. 194 (2001), courts

ask two questions when evaluating qualified immunity:  (1) "whether the facts that a plaintiff has … shown make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)(internal citation and quotation marks omitted).  These prongs can be satisfied in any order.  *Id*. at 225.  In this analysis, the Court takes the facts "in the light most favorable to the party assessing the injury."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

## 1. *The Right to be Free of Unreasonable Seizure via Unjustified Deadly Force is Clearly Established*

The "clearly established" prong of the *Saucier* test is readily met here.  The right to be free from deadly force when not posing a reasonable threat to others is clearly established in the Sixth Circuit, and was clearly established before Officer Zola shot Danny Withers on September 30, 2010.  *See Jones v. Sandusky*, 541 Fed. Appx. At 665-66, citing *Bletz v. Gribble*, 641 F.3d 743, 752 (6th Cir. 2011); *Ciminillo v. Streicher,* 434 F.3d 461, 468 (6th Cir. 2006)(stating that the court has clearly established that a person has a "right not to be shot unless they are perceived as posing a threat to officers or others")).  Thus, the first prong of the *Saucier* test is met.

## 2. *Defendant Zola Violated Decedent Danny Withers' Constitutional Rights*

The second prong of the *Saucier* test is met because it is clear that Officer Zola violated Danny Withers' constitutional rights.  As explained in section II.A., *supra*, Officer Zola did, in fact, engage in an unreasonable seizure by unjustified deadly force.  This conduct violated Danny Withers' rights under the Fourth and Fourteenth Amendments.  Thus, both prongs of the *Saucier* test are met and Officer Zola is not entitled to qualified immunity.

## C.  Assault and Battery

10

Officer Zola knowingly caused physical harm to Danny Withers by use of deadly force which was excessive, disproportionate under the circumstances, and unjustifiable.  In Ohio, "battery" is 'an intentional unconsented-to contact with another,' *Snyder v. Turk*, 90 Ohio App. 3d 18, 23, 627 N.E.2d 1053, 1057 (1993), while assault in the beginning of the act which, if consummated, would constitute battery.'" *Davis v. Bergeon*, Case No. No. 98-3812, 1999 U.S. App. LEXIS 17984 (6th Cir. 1999) at *18-19, citing *Matlock v. Ohio Dep't of Liquor Control*, 77 Ohio Misc. 2d 13, 18, 665 N.E.2d 771, 774 (1996).  Under Ohio law, "an essential element of an assault and battery action is the intent to inflict personal injury upon another.  Thus, for an act to constitute battery, the actor must know that his act will bring about a harmful or offensive contact." *Id* (internal citations omitted).

Danny Withers did not consent to being shot to death.  Officer Zola intended to pull the trigger of firearm and intentionally aimed the weapon at Danny Withers' heart.  It is undisputed that Officer Zola's use of deadly force actually and proximately caused Danny Withers' death. This conduct constitutes assault and battery.

### D.  Immunity under Ohio Law

Officer Zola is not entitled to immunity under Ohio Revised Code § 2744.  Political subdivision employees who engage in "acts or omissions with malicious purpose, in bad faith, or in a wanton or reckless manner" are not immune from suit in Ohio.  Ohio Rev. Code § 2744.03(6).  The Ohio Supreme Court established three degrees of care in O.R.C. § 2744.02(B)(1)(b) and § 2744.02(A)(6)(k) for imposing liability on subdivision employees: willful, wanton, and reckless.  *Anderson v. Massillon*, 134 Ohio St.3d 380 (2012) at ¶23.

11

In *Carpenter v. City of Cincinnati*, 2003 U.S. Dist. LEXIS 7105 at *13 (S.D. Ohio, April 17, 2013), the Southern District of Ohio explained that a police officer is an employee of a political subdivision and, as such, is generally protected by the statutory immunity granted by O.R.C. § 2744.03, noting that the Court begins with the presumption of immunity.  The plaintiff bears the burden of demonstrating that the officers' actions fall within one of the three exceptions set forth in O.R.C. § 2744.03(A)(6).

Officer Zola's actions were within the scope of his employment as a police officer.  Thus, it is necessary to consider the second exception (whether Officer Zola's acts or omissions were willful, wanton, or reckless) to determine whether he is entitled to immunity under Ohio law.

As stated in *Martin v. City of Broadview Heights*, 712 F.3d 951, 963 (6th Cir. 2013), "[q]ualified immunity does not protect the officer[] here …. [R]esolution of the state-law immunity issue is heavily dependent on the same disputed material facts as the excessive-force determination under § 1983."  For the same reasons that Office Zola is liable for willful, wanton, or reckless conduct under Ohio law, discussed above in Section II.C., *supra*, and for the same reasons he is not entitled to qualified immunity, discussed in Sections II.A-B, *supra*, Officer Zola is also not entitled to O.R.C. § 2744 immunity.  As demonstrated in Section II.A., *supra*, Officer Zola's actions on September 30, 2010 violated Danny Withers rights under the Fourth and Fourteenth Amendments.  As explained in Section II.C., *supra*, Officer Zola's conduct was wanton or reckless.  Because Officer Zola violated Danny Withers' constitutional rights, and because it is clear that Officer Zola acted within the scope of his employment but nonetheless in a wanton or reckless manner pursuant to Ohio law, Officer Zola is not entitled to immunity under O.R.C. § 2744.

12

### E.  THE CITY OF CLEVELAND'S LIABILITY

Municipalities are "persons" for purposes of § 1983, but they cannot be found liable merely because one of their employees is a tortfeasor.  *Kalvitz v. City of Cleveland*, 2017 U.S. Dist. LEXIS 217570, *23 (N.D. Ohio 2017).  To assert a § 1983 claim against a municipality, a plaintiff must demonstrate that the alleged constitutional violation occurred "because of a municipal policy or custom."  *Id.*

In the present matter, the Plaintiffs have asserted that the City of Cleveland's custom or policy and/or acquiescence towards excessive force and lack of training and supervision of its police officers caused Defendant Zola to use excessive force on Danny Withers.  To prevail on this theory, the Plaintiffs must show:  1) the existence of a clear and persistent pattern of illegal activity; 2) notice or constructive notice on the part of the Defendant City of Cleveland; 3) the Defendant City of Cleveland's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and 4) that the Defendant City of Cleveland's custom was the "moving force" or direct causal link in the constitutional deprivation.  *Kalvitz v. City of Cleveland*, 2017 U.S. Dist. LEXIS 217570, *23 (N.D. Ohio 2017).

In support of their assertion, Plaintiffs intend to present evidence of the 2002 and 2014 reports of the United States Department of Justice on the use of force by the Cleveland Police Department.  The Civil Rights Division of the Department of Justice has undertaken two investigations into the Cleveland Division of Police, which have culminated in reports reflecting that the Cleveland Division of Police engages in a pattern or practice of using unconstitutional force in violation of the Fourth Amendment.

13

Based on the findings in the Department of Justice Reports, a reasonable jury could find that the Defendant City of Cleveland has a custom and practice of tolerating officer's use of excessive force and has failed to properly train and supervise its officer on use of force.

### III.  LIST OF PROPOSED WITNESSES AND BRIEF DESCRIPTION OF THE SUBJECT MATTER OF THE TESTIMONY OF EACH WITNESS

1) Plaintiff Dan Withers – father of decedent Danny Withers and the administrator of Danny Withers estate.  The subject matter of his testimony, will include but not be limited to his and the estate's damages and his observations upon arriving at the scene after Defendant Zola killed Danny.

2) Plaintiff LaVette Carr – mother of decedent Danny Withers.  The subject matter of her testimony will include, but not be limited to her and the estate's damages.

3) Defendant Daniel Zola – The subject matter of his testimony will include, but not be limited to the events and circumstances leading up to and surrounding his decision to use deadly force on Danny Withers.

4) Sgt. Thomas Shoulders – The subject matter of his testimony will include, but not be limited to his observations prior to and after Defendant Zola shot and killed Danny Withers.

5) Detective David Shapiro - The subject matter of his testimony will include, but not be limited to his observations prior to and after Defendant Zola shot and killed Danny Withers.

6) Dr. Michael Lyman – Plaintiffs' police practices expert.

7) Andrea McCollom, M.D. – performed autopsy on Danny Withers.

8) Frank Miller, III, M.D. – approved autopsy of Danny Withers.

9) Curtis L. Jones, MS – prepared and submitted a trace evidence laboratory examination report on behalf of the Cuyahoga County Regional Forensic Science Laboratory.

10) Paul Shaia – Damages.  His parking lot company employed Dan Withers and would have considered hiring Danny.

11) Ida May Withers – grandmother of decedent Danny Withers.  Her testimony will include, but not be limited to what she observed when Defendant Zola and the other

14

Cleveland Police Officers arrived at her residence on September 30, 2010 to locate and arrest decedent Danny Withers.

12) Kathleen M. Carlin – investigated Defendant Zola's use of deadly force on Danny Withers.

13) Custodian of Records/Representative of United States Department of Justice.

14) Rodtez Woody - The subject matter of his testimony will include, but not be limited to his observations at scene after Defendant Zola killed Danny Withers and damages as he was a close friend of Danny's.

15) Dennis Daniel – The subject matter of his testimony will include, but not be limited to his observations at scene after Defendant Zola killed Danny, including statements he overhead from law enforcement officers about what occurred immediately prior to the shooting.

Plaintiffs reserve the right to supplement, amend, or correct this witness list as permitted by the Court.

## IV. INDEX OF ALL PROPOSED EXHIBITS CONTAINING A BRIEF DESCRIPTION OF EACH EXHIBIT

1. UDFIT Original Investigation #10-19- Bates 1-52

2. Supplemental Report to UDFIT #10-19- Bates 53-57

3. CPD Forensic Laboratory Report, Agency Case No.: 2010-315718, Bates 57-60

4. Cuyahoga County, Forensic Science Laboratory Evidence Submission Form, Bates 61

5. Cuyahoga County Forensic Laboratory DNA Examination Report, Bates 63-64.

6. ZOLA, Glock Evidence Tag and CPD Range Record, Bates 65-67

7. Crime Scene Entry Log, Bates 68-73

8. Consent to Search Form, Ida Withers & Inventory List, Bates 74-75

9. Danny M. Withers OHLEG Print Out, Bates 76-81

10. Danny M. Withers, CPD Booking Record, Bates 82

11. Danny M. Withers OHLEG Print Out, Bates 83-87

12. Statement of PO Dustin W. Miller, Bates 88

13. Statement of PO Daniel McCandless, Bates 89

14. Statement of PO Vincent A. Schneider, Bates 90

15. Statement of Det. Dan W. Zola, Bates 91-94

16. Statement of Sgt. Thomas Shoulders, Bates 95-98

17. Statement of Det. David Shapiro, Bates 99-101

18. CPD Offense/Incident Report, Felonious Assault Det. Carlin, Bates 102-105

19. CPD Record Mgmt System Incident Report, Bates 106-108

20. CPD Offense/Incident Report, Det. Carlin Follow Up, Bates 109-110

21. CPD Record Mgmt System Incident Report, Bates 111-112

22. CPD Offense/Incident Report, Bank Robbery, Officer David J. Lee, Bates 113-118

23. CPD Offense/Incident Report, Officer Andrew W. Harhay, Felonious Assault, Victim Danny M. Withers, Case No.: 2004-00423421, Bates 119-127

24. CPD Record Mgmt System Incident Report, Case No.: 2004-00423421, Bates 128-132

25. Prosecutor Ruling- UDFIT # 10-19 "Referred to Grand Jury", Bates 133

26. CPD Internal Affairs Unit Investigative Report, 2-8-11, Sgt. Randall Bergeon, Bates 134-135

27. Det. Tim Entanok City of Cleveland Confidentiality Agreement, 1-29-11, Bates 136

28. Cleveland EMS Run Report, Bates 137-141

29. Coroner's Verdict 10-1-10, "Homicide", Bates 143

30. Autopsy Protocol & Report of Autopsy, Danny M. Withers, 1-19-11, Bates 144-149

31. Toxicology Report, Bates 150-152

16

32. Det. Tim Entanok Record Request to Cuyahoga County Coroner, Bates 153

33. Amendment to Coroner's Verdict, Original Coroner's Verdict, and Notification of Amendment to Verdict, 2-1-11 Bates 154-159

• SIU Photographs:

34.    Officer Photographs:
       Photographs of Det. Thomas Shoulders, Bates 160-164

35.    Officer Photographs:
       Photographs of Det. Daniel Zola, Bates 165-169

36.    Firearm Photographs:
       Glock 19, 9mm, two (2) loaded magazines, and loose ammunition, Bates 170-174

37.    Officer Photographs:
       Photographs of Det. David Shapiro, Bates 175-179

38.    Firearm Photographs:
       Det. Zola's Glock 19, SN: FUF411 9mm & magazines, Bates 180-187

39.    Scene Photographs:
       1146-1148 East 125th Street, Home Exterior, Bates 188-199

40.    Scene Photographs:
       1146-1148 East 125th Street, Evidence Marker 12, Reds Hat, Bates 200-201

41.    Scene Photographs:
       1146-1148 East 125th Street, Misc. Cash, Bates 202-203

42.    Scene Photographs:
       1146-1148 East 125th Street, Evidence Marker 11, White FILA Shoes, Bates 204-206

43.    Scene Photographs:
       1146-1148 East 125th Street, Pirates Jacket & Cash, Bates 207-211

44.    Scene Photographs:
       1146-1148 East 125th Street, Bedroom, Bates 212-216

45.    Scene Photographs:
       1146-1148 East 125th Street, Home Exterior, Bates 217-218

17

46.    Scene Photographs:
1146-1148 East 125th Street, Evidence Marker 2, Suspected Blood From Storage Room in Basement, Bates 219

47.    Scene Photographs:
1146-1148 East 125th Street, Basement Stairs & Evidence Markers 1& 2, Screwdriver Stained with Suspected Blood & Suspected Blood From Storage Room in Basement, Bates 220-224

48.    Scene Photographs:
1146-1148 East 125th Street, Evidence Markers 3 & 4, Suspected Blood on Mattress on Basement Floor & on Basement Floor, Bates 225-226

49.    Scene Photographs:
1146-1148 East 125th Street, Evidence Marker 6, Spent 9mm Casing located on the Mattress in the Basement, Bates 227

50.    Scene Photographs:
1146-1148 East 125th Street, Mattress in Basement, Evidence Markers 2,3,5 & 6, Bates 228-229

51.    Scene Photographs:
1146-1148 East 125th Street, Basement Full View, Bates 230-231

52.    Scene Photographs:
1146-1148 East 125th Street, Evidence Marker 9, Suspected Blood on Floor, Entrance Door and Glass of Storm Door, Bates 232-238

53.    Scene Photographs:
1146-1148 East 125th Street, Evidence Marker 8, Suspected Blood on Steps in Basement, Bates 239-240

54.    Scene Photographs:
1146-1148 East 125th Street, Evidence Marker 7, Suspected Blood on Floor in Basement, Bates 241

55.    Scene Photographs:
1146-1148 East 125th Street, Evidence Markers 8 & 9, Suspected Blood on Floor, Entrance Door and Glass of Storm Door & Suspected Blood on Steps in Basement, Bates 242

56.    Scene Photographs:

1146-1148 East 125th Street, Evidence Marker 7, Suspected Blood on Floor in Basement, Bates 243-245

57.    Scene Photographs:
       1146-1148 East 125th Street, Evidence Marker 6, Spent 9mm Casing located on the Mattress in the Basement, Bates 246

58.    Scene Photographs:
       1146-1148 East 125th Street, Evidence Marker 5, Suspected Blood on the Mattress in the Basement, Bates 247

59.    Scene Photographs:
       1146-1148 East 125th Street, Evidence Marker 4, Suspected Blood on Floor in the Basement, Bates 248

60.    Scene Photographs:
       1146-1148 East 125th Street, Evidence Marker 3 Suspected Blood on Mattress on Basement Floor, Bates 249

61.    Scene Photographs:
       1146-1148 East 125th Street, Evidence Marker 2, Suspected Blood From Storage Room in Basement, Bates 250

62.    Scene Photographs:
       1146-1148 East 125th Street, Basement Stairs & Evidence Marker 1, Screwdriver Stained with Suspected Blood within the basement enclosed storage room Bates 251-252

63.    Scene Photographs:
       1146-1148 East 125th Street, Basement Enclosed Storage Room & Evidence Markers 1& 3, Bates 253

64.    Scene Photographs:
       1146-1148 East 125th Street, Mattress in Basement & Evidence Markers 2,3,5 &6, Bates 254

65.    Scene Photographs:
       1146-1148 East 125th Street, Basement Storage Room & Plaintiff on Mattress Covered, & Evidence Markers 2,3,4,5 & 6, Bates 255-257

66.    Scene Photographs:
       1146-1148 East 125th Street, Basement, Full View, Bates 258-262

67.     Scene Photographs:
        1146-1148 East 125th Street, Stairs Leading to Basement, Bates 263

68.     Scene Photographs:
        1146-1148 East 125th Street, Exterior, Outside Fence & Storm Door, Bates 264-266

69.     Scene Photographs:
        1146-1148 East 125th Street, Exterior of Home, Bates 268-272

70.     Scene Photographs:
        1146-1148 East 125th Street, Digital Photo Evidence Tag, Photos taken by Johnson #1575, 9-30-10, Bates 273

71.     Audio:
        CPD, Withers Dispatch Call, 9-30-10, 31 minutes 28 Seconds

72.     Estate of Danny Withers, Deceased, Cuyahoga County Probate Court Case Number 2010 EST 0162633 entry appointing fiduciary

73.     Huron Hospital medical records of Danny M. Withers, with bill

74.     Copy of card, Kathleen M. Carlin

75.     Dcm Services bill for Emergency Professional Services to Estate of Danny Withers, in the amount of $981.00

76.     Dcm Services creditors claim to Estate of Danny Withers, in the amount of $981.00

77.     Huron Hospital Billing statement, in the amount of $6,219.00

78.     Watson Funeral Home Invoice

79.     Watson Funeral Home receipt

80.     Expert Report of Dr. Michael Lyman

81.     Dr. Michael Lyman CV

82.     U.S. Department of Justice Reports of Investigation of the Cleveland Division of Police dated July 23, 2002 and December 4, 2014.

20

Plaintiffs reserve the right to supplement, amend, or correct this exhibit list as permitted by the Court.

## V.  EVIDENTIARY ISSUES LIKELY TO ARISE AT TRIAL

The Trial Order requires the discussion of any evidentiary issues likely to arise at trial. Plaintiffs' counsel does not anticipate evidentiary issues at trial, other than those that have been raised in their Motion to Show Cause and for Sanctions that seeks to exclude evidentiary materials, the testimony of the Defendants' expert witness, and the testimony of various witnesses whose identities were not timely disclosed by the Defendants in violation of Civil Rules 26(a) and (e) (ECF 88).

## VI.  PROPOSED VOIR DIRE QUESTIONS

Plaintiffs, through counsel, hereby submit proposed *voir dire* questions for the Court pursuant to the Court's trial Order.

1.  In the trial of this case, the parties are entitled to have a fair, unbiased, and unprejudiced jury.  If there is any reason why any of you might be biased or prejudiced in any way, you must disclose such reason when you are asked to do so.  It is your duty to make this disclosure.

2.  Have you ever served on a jury?

3.  Have you heard or read or know anything about the subject matter of this trial?

4.  Do you know the Plaintiffs, Dan Withers, LaVette Carr, or Danny Withers?

5.  The Defendant in this case is City of Cleveland Police Officer Daniel Zola, do you know him?

6.  Do you have any knowledge of the following potential witnesses in this case? (Court reads witness list.)

7.   Do any of you have any relationship with an employee of the City of Cleveland, the City of Cleveland Police Department, or the Cuyahoga County Prosecutor's Office.

8.   Do you know any of the attorneys or any members of their families?  The names of the attorneys are as follows:

Larry W. Zukerman

S. Michael Lear

Brian A. Murray

Thomas Kaiser

John P. Bacevice

Janeane Cappara

Marian Toney

9.   Do any of you have any belief or feeling for or against the City of Cleveland Police Department or its officials that might prevent you from being a completely fair and impartial juror in this case?

10. Have you or any member of your family or any person close to you, to your knowledge, ever sued anyone, or presented a charge or claim against anyone, alleging a violation of civil rights or any other claim?

11. Do any of you believe that there are too many lawsuits filed?

12. Have you ever been a witness in a case (civil or criminal)?

13. Does your job cause to work with any law enforcement officer, agency, prison, or jail?

14. Have you ever received any training in law enforcement or taken any courses in law enforcement?

15. Do you have any close relatives who are attorneys?

16. Do you have any legal training?

17. Would you believe the testimony of a police officer over that of a private citizen?

18. Have you or a member of your immediate family ever been employed by any governmental body?

19. Are you related to or a close friend of any law enforcement officer, correctional officer, prosecutor or security officer?

20. Have you or a member of your family ever been the victim of a crime?

21. Do you or any members of your family own a firearm?

22. Have you or your immediate family ever had an unpleasant experience with a police officer or police department in general?

23. Have you ever made a complaint to the police about their official performance?

24. Do any of you have a problem awarding damages against a police officer when a citizen's civil rights were violated?

25. The Plaintiffs will be asking you to award monetary damages against the Defendants? Do you have a problem in awarding substantial monetary damages if warranted?

26. Have you or any close family members served in the military?

27. Have you or any close family members worked for a liability insurance company?

28. Do you know of any other reason, or anything occurring during this question period, that might make you doubtful whether or not you would be a completely fair and impartial juror in this case?

29. Have you, a close friend, or any member of your family ever had an experience with law

23

enforcement officers that has caused you to have strong feelings for or against law enforcement officers?  If yes, please explain.

30. Do you have any health issues, hearing, or sight problems which would affect your ability to be attentive in this case?

31. If a police officer uses force while confronting a citizen, do you think his action would always be justified?

32. If a police officer makes an arrest while confronting a citizen, do you think his action would always be justified?

33. Do you believe police officers always make the best decisions in the line of duty?

34. Have you or any one in your immediate family ever held any public office?

**VII.  PLAINTIFFS' PROPOSED JURY INSTRUCTIONS**

**PLAINTIFFS' JURY INSTRUCTION NO. 1**

**<u>INTRODUCTION</u>**

MEMBERS OF THE JURY:

Now that you have heard all of the evidence and the argument of counsel, it becomes my duty to give you the instructions of the Court concerning the law applicable to this case.

It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts as you find them from the evidence in the case. You are not to single out any one instruction alone as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by me.

24

Federal Jury Practice and Instructions, 6th Edition, O'Malley, et al., § 103.01.

**PLAINTIFFS' JURY INSTRUCTION NO. 2**

**<u>DUTY TO FOLLOW INSTRUCTIONS</u>**

Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in the instructions of the Court, just as it would also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence in the case.

In deciding the facts of this case you must not be swayed by bias or prejudice or favor as to any party. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court, and reach a just verdict regardless of the consequences.

This case should be considered and decided by you as an action between persons of equal standing in the community, and holding the same or similar stations in life.

Federal Jury Practice and Instructions, 6th Edition, O'Malley, et al., § 103.01.

## PLAINTIFFS' JURY INSTRUCTION NO. 3

## <u>CONSIDERATION OF THE EVIDENCE</u>

As stated earlier, it is your duty to determine the facts, and in so doing you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses; all exhibits admitted in the record; and all facts which have been admitted or stipulated. Any evidence to which the Court sustained an objection and any evidence ordered stricken by the Court must be entirely disregarded.

Remember that any statements, objections or arguments made by the lawyers are not evidence in the case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you.

Also, during the course of a trial I occasionally make comments to the lawyers, or ask questions of a witness, or admonish a witness concerning the manner in which he or she should respond to the questions of counsel. Do not assume from anything I may have said that I have any opinion concerning any of the issues in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts. You may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

Federal Jury Practice and Instructions, 6th Edition, O'Malley, et al., § 103.30.

27

## PLAINTIFFS' JURY INSTRUCTION NO. 4

### <u>DIRECT AND CIRCUMSTANTIAL EVIDENCE</u>

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses - something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.


Federal Jury Practice and Instructions, 6th Edition, O'Malley, et al., §101.42, 1.6.

## PLAINTIFFS' JURY INSTRUCTION NO. 5

## <u>CREDIBILITY OF WITNESSES</u>

You must, during your deliberations, decide what weight shall be given to the evidence. To do this you must determine the credibility or truthfulness of the witnesses who have testified before you. You are not required to believe the testimony of any witness simply because he or she was under oath. You may believe the testimony given by any witness in whole, in part, or not at all.

In testing the credibility of witnesses you may consider the behavior of the witnesses upon the witness stand; their manner of testifying; the reasonableness and the probability of their testimony being true or not true; the opportunity they had to see, hear and know the things about which they testified; the accuracy of their memories; their candor or lack of candor; and their intelligence, interest, and bias, if any. You may consider any relationship a witness may have to either side of the case and the manner in which a witness might be affected by the verdict to be rendered. You may consider the extent to which, if at all, the testimony given by any witness is supported or contradicted by other evidence in the case. You should consider, in sum, all of the circumstances surrounding the testimony of a given witness.

You may apply the tests of truthfulness I have mentioned as well as any such tests you are accustomed to applying in your own daily lives to weigh and determine the value and credibility of the statements made by each witness.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or non-existence of any fact. You may find that the

testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

Federal Jury Practice and Instructions, 6th Edition, O'Malley, et al., § 1.7, 101.43.

**PLAINTIFFS' JURY INSTRUCTION NO. 6**

**<u>IMPEACHMENT</u>**

A witness may be discredited or "impeached" by contradictory evidence, by a showing that he or she testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony.

In addition, a witness may be discredited or impeached by showing that the witness has made false statements, whether under oath or not, in other circumstances in which the witness had a motive to make false statements.

If you believe that any witness has been so impeached, then it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves.


Federal Jury Practice and Instructions, 6th Edition, O'Malley, et al., §105.04.

## PLAINTIFFS' JURY INSTRUCTION NO. 7

## <u>EXPERT WITNESS</u>

You have heard testimony from expert witnesses. The rules of evidence provide that if scientific, technical, medical, or other specialized knowledge might assist the jury in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify and state his opinion concerning such matters.

You should consider the opinions expressed by the experts and give them such weight as you may think they deserve. If you should decide that an opinion is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of an opinion are not sound, or that an opinion is outweighed by other evidence, then you may disregard the opinion entirely.

Federal Jury Practice and Instructions, 5th Edition, O'Malley, et al., §14.01.

**PLAINTIFFS' JURY INSTRUCTION NO. 8**

**TESTIMONY OF POLICE OFFICERS**

The testimony of a police officer is entitled to no special or exclusive sanctity. A police officer who takes the witness stand subjects his testimony to ethe same examination and the same tests that any other witness does, and in the case of police officers you should not believe them merely because they are police officers. You should recall their demeanor on the stand, their manner of testifying, the substance of their testimony, and weigh and balance it just as carefully as you would the testimony of any other witness. People employed by the Government, including policemen, do not stand in any higher station in the community than other persons, and their testimony is not entitled to any greater weight.

Roberts v. Hollocher, 664 F.2d 200 (8th Cir. 1981);
Darbin v. Nourse, 664 F.2d 1109 (9th Cir. 1981).

33

## PLAINTIFFS' JURY INSTRUCTION NO. 9

### BURDEN OF PROOF

The burden of proof in a civil action is on the plaintiff. This is unlike a criminal action where the burden of proof is on the State to prove each and every element of the crime charged beyond a reasonable doubt. In a civil action, the plaintiff has a lesser burden to prove every essential element of his claim by a "preponderance of the evidence." A preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true. In other words, to establish a claim by a "preponderance of the evidence" merely means to prove that the claim is more likely so than not so.

In determining whether any fact in issue has been proved by a preponderance of the evidence, the jury may consider the testimony of all the witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have produced them. Proof may not, however, be based upon mere speculation or conjecture. If the proof should fail to establish any essential element of the Plaintiffs' claims by a preponderance of the evidence, the jury should find for the defendants as to that claim.

34

**PLAINTIFFS' JURY INSTRUCTION NO.10**

<u>SECTION 1983-ELEMENTS OF A CLAIM-</u>
<u>ACTION UNDER COLOR OF STATE LAW</u>

Plaintiffs must prove both of the following elements by a preponderance of evidence:

First:  Defendant Zola acted under color of state law.

Second:  While acting under color of state law, Defendant Zola deprived Danny Withers of a federal constitutional right.

I will give you more details on action under color of state law, after which I will tell you the elements the Plaintiffs must prove to establish the violation of Danny Withers' constitutional right.

The first element of the Plaintiffs' claim is that Defendant Zola acted under color of state law.  This means that the Plaintiffs must show that Defendant Zola was using power that he possessed by virtue of state law.

A person can act under color of state law even if the act violates state law.  The question is whether the person was clothed with the authority of the state, by which I mean using or misusing the authority of the state.

By "state law," I mean any statute, ordinance, regulation, custom or usage of any state. And when I use the term "state", I am including any political subdivisions of the state, such as a county or municipality, and also any state, county or municipal agencies.

Third Circuit Model Jury Instructions Civil 4.3 and 4.4. (2011)

## PLAINTIFFS' JURY INSTRUCTION NO. 11

## <u>FOURTH AMENDMENT EXCESSIVE FORCE CLAIM</u>

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest and/or in defending himself and/or others. Thus, in order to prove an unreasonable seizure in this case, the plaintiff must prove by a preponderance of evidence that Defendant Zola used excessive force when he shot and killed Danny Withers.

Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all circumstances. In other words, you must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.

In determining whether Defendant Zola used excessive force in this case, consider all of the circumstances known to Defendant Zola on scene, including:

1. The circumstances to which Defendant Zola was responding;

2. Whether Danny Withers posed an immediate threat to the safety of Defendant Zola and/or to the other police officers at the time Defendant Zola shot and killed Danny Withers;

3. Whether Danny Withers was actively resisting arrest or attempting to evade arrest by flight;

4. The amount of time and any changing circumstances during which Officer Zola had to determine the type and amount of force that appeared to be necessary;

36

5.  The type and amount of force used by Defendant Zola;

6.  The availability of alternative methods to take Danny Withers into custody;

7.  Other factors particular to the case.

Ninth Circuit Manual of Model Jury Instructions Civil 9.22 (2003)

**PLAINTIFFS' JURY INSTRUCTION NO. 12**

**<u>MUNICIPAL LIABILITY – GENERAL INSTRUCTION</u>**

If you find that Danny Withers was deprived of his constitutional right to be free from excessive force by Defendant Zola, the Defendant City of Cleveland is liable for that deprivation if the Plaintiffs prove by a preponderance of the evidence that the deprivation resulted from the Defendant City of Cleveland's official policy or custom – in other words, that the Defendant City of Cleveland's official policy or custom caused the deprivation.  It is not enough for the Plaintiffs to show that the Defendant City of Cleveland employed a person who violated Danny Withers' rights.  The Plaintiffs must show that the violation resulted from the Defendant City of Cleveland's official policy or custom.  "Official policy or custom" includes any of the following:

- a rule or regulation promulgated, adopted, or ratified by the Defendant City of Cleveland;

- a policy statement or decision that is officially made by the Defendant City of Cleveland's policy-making official;

- a custom that is a widespread, well-settled practice that constitutes a standard operating procedure of the Defendant City of Cleveland;

- inadequate training and inadequate supervision of its police officers on use of force. However, inadequate training and inadequate supervision does not count as an "official policy or custom" unless the Defendant City of Cleveland is deliberately indifferent to the fact that a violation of an individual's right to be free from excessive force at the hands of law enforcement officers is a highly predictable consequence of inadequate training and supervision.  I will explain this further in a moment.

I will now proceed to give you more details on each of the ways in which the Plaintiffs may try to establish that an official policy or custom of the Defendant City of Cleveland caused the deprivation.

Third Circuit Model Jury Instructions Civil 4.6.9 (2011)

**PLAINTIFFS' JURY INSTRUCTIO NO. 13**

**MUNICIPAL LIABILITY – INADEQUATE TRAINING OR SUPERVISION**

Plaintiffs claim that the Defendant City of Cleveland adopted a policy of inadequate training and/or inadequate supervision as it relates to its police officers' use of force, and that this policy caused the violation of Danny Withers' constitutional right to be free from excessive force by law enforcement officers.

In order to hold the Defendant City of Cleveland liable for the violation of Danny Withers' constitutional right to be free from excessive force by law enforcement officers, you must find that the Plaintiffs have proved each of the following three things by a preponderance of the evidence.

First:  The Defendant City of Cleveland's use of force training program was inadequate to train its police officers on use of force; and/or that the Defendant City of Cleveland failed to adequately supervise its police officers as to their use of force;

Second:  The Defendant City of Cleveland's failure to adequately train and/or adequately supervise its police officers on use of force amounted to deliberate indifference to the fact that inaction would obviously result in the violation of its citizens' rights to be free from excessive force by its police officers.

Third:  The Defendant City of Cleveland's failure to adequately train and/or adequately supervise its police officers on use of force proximately caused the violation of Danny Withers' constitutional right to be free from excessive force by law enforcement officers.

39

In order to find that the Defendant City of Cleveland's failure to adequately train and/or adequately supervise its police officers on use of force amounted to deliberate indifference, you must find that the Plaintiffs have proved each of the following three things by a preponderance of the evidence:

First:  The Defendant City of Cleveland knew that its law enforcement officers would confront use of force situations.

Second:  City of Cleveland Police Officers have a history of using excessive force.

Third:  The wrong choice by a City of Cleveland Police Officer in a use of force situation will frequently cause a deprivation of an individual's constitutional right to be free from excessive force by police officers.

In order to find that the Defendant City of Cleveland's failure to adequately train and/or adequately supervise proximately caused the violation of Danny Withers' constitutional rights, you must find that the Plaintiffs have proved by a preponderance of the evidence that the Defendant City of Cleveland's deliberate indifference led directly to the deprivation of Danny Withers' constitutional rights to be free from excessive force by law police officers.

Third Circuit Model Jury Instructions Civil 4.6.7 (2011)

**PLAINTIFFS' JURY INSTRUCTIO NO. 14**

**<u>PROXIMATE CAUSE</u>**

Plaintiffs must prove that the actions of Defendant Zola proximately caused the death of Danny Withers. An act or failure to act is the proximate cause when it, in the natural and continuous sequence, directly produced the harm and without which the harm would not have occurred.

**PLAINTIFFS' JURY INSTRUCTION NO. 15**

**STATE LAW CLAIM – ASSAULT AND BATTERY**

Plaintiffs also alleges that Defendant Zola committed assault and battery because of the shooting death of Danny Withers.

Whoever unlawfully assaults or threatens another in a menacing manner, or unlawfully strikes or wounds another, is guilty of assault and battery.  To constitute an assault and battery, under the law, there must be an intent on the part of Defendant Zola, to inflict some physical injury,  no matter how slight, upon the person of the Danny Withers.  In other words, the Plaintiffs must prove that Defendant Zola used excessive force with the intent of inflicting personal violence or injury upon Danny Withers.

With respect to the state law claim, therefore, the burden is upon the Plaintiffs to prove, by a preponderance of the evidence, the following facts. First, that Defendant Zola committed an assault  and battery upon Danny Withers. Second, that said assault and battery was the direct and proximate cause of the death of Danny Withers. And third, that the damages which Plaintiffs allege that Danny Withers sustained were the direct and proximate result of the conduct of Defendant Zola.

If you find that the Plaintiffs have proven these elements by a preponderance of the evidence, then you must enter a verdict in favor of the Plaintiffs. If you find that the Plaintiffs have failed to prove any of the above elements by a preponderance of the evidence, then you must enter a verdict in favor of Defendant Zola.

Ohio Jury Instructions

42

**PLAINTIFFS' JURY INSTRUCTION NO. 16**

## <u>MALICE</u>

"Malice" is defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified.

## <u>WANTON</u>

Wanton misconduct must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be aware, from his knowledge of such circumstances and conditions, that his conduct will probably result in injury. Wanton misconduct implies a failure to use any care for Danny Withers and an indifference to the consequences, when the probability that harm would result from such failure is great, and such probability is known, or ought to have been known, to Defendant Zola.

## <u>RECKLESS</u>

A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause serious injury.

O.R.C. §2744.03; Ohio Jury Instructions §7.90.

## PLAINTIFFS' JURY INSTRUCTION NO. 17

### <u>INTRODUCTION TO DAMAGES</u>

If you find that Defendant Zola proximately caused the death of Danny Withers and your verdict is for the Plaintiffs you will then determine from a preponderance of the evidence an amount of money that will fully and fairly compensate the Plaintiffs for the injury or damage proximately caused by Defendant Zola's conduct.

If you find the Defendant City of Cleveland is liable for having an official custom or policy that caused Danny Withers to be deprived of his constitutional right to be free from excessive force and/or that the Defendant City of Cleveland failed to train and/or supervise its police officers on use of force and that said failure caused the violation of Danny Withers' constitutional rights, you will then determine from a preponderance of the evidence an amount of money that will fully and fairly compensate the Plaintiffs for the injury or damage proximately caused by the Defendant City of Cleveland's conduct.

If your verdict is for Defendants Zola and the City of Cleveland on Plaintiffs' Complaint, you will not have any reason to consider the subject of damages.

The fact that I am instructing you on the proper measure of damages should not be considered as an indication of any view of mine as to which party is entitled to your verdict in this case. Instructions as to the measure of damages are given only for your guidance, in the event that you should find in favor of Plaintiffs on the question of Defendant Zola's liability and/or the Defendant City of Cleveland's liability, by a preponderance of evidence in accord with the other instructions.

44

**PLAINTIFFS' JURY INSTRUCTION NO. 18**

**<u>DAMAGES - WRONGFUL DEATH</u>**

If you find for Plaintiff Dan Withers, as the Administrator of the Estate of Danny Withers, you will determine what sum of money will compensate the next of kin for the injury and loss to them resulting by reason of the wrongful death of Danny Withers. You are instructed that the beneficiaries are the decedent's father and mother, Dan Withers and LaVette Carr.

In determining damages suffered by reason of the wrongful death, you may consider all factors existing at the time of Danny Withers' death. The factors you may consider include:

a)    loss of services of the decedent
b)    loss of earnings of the decedent
c)    loss of society of the decedent, including loss of companionship, car, assistance, protection advice, guidance, counsel; and
d)    the mental anguish incurred by the next of kin.

In addition to an award of compensatory damages, you may make an award for the reasonable funeral and burial expenses, if these expenses are established by the evidence. You are instructed that you are required to set forth separately in your verdict any amount awarded for the reasonable funeral and burial expenses.

Ohio Jury Instructions, CV 315.49, Vol. 1, 2011.

**PLAINTIFFS' JURY INSTRUCTION NO. 19**

**<u>COMPENSATORY DAMAGES</u>**

If you find for Plaintiffs on the question of liability, you must then fix the amount of money that will reasonably compensate her for the harm suffered. A Defendant is liable for civil damages, whether or not the result was intended or officials had full knowledge of the possible consequences of official actions. You may award compensation for the loss of earnings, love, companionship, comfort, affection, society, solace, or moral support from a decedent to the Plaintiffs for the losses caused by the death of the decedent. Additionally, the Plaintiffs will be entitled to damages for the violation of the decedent's constitutionally protected rights.

<u>Memphis Community School District v. Stachura</u>, 477 U.S. 299 (1986); <u>Chatman v. Slagle</u>, 107 F.3d 380 (6th Cir. 1997).

**PLAINTIFFS' JURY INSTRUCTION NO. 20**

**MENTAL AND EMOTIONAL PAIN**

If you find for the Plaintiffs, you should also consider any intangible injuries that you find the next of kin sustained as the proximate result of Defendant Zola's actions in causing the death of Danny Withers, such as emotional pain, outrage, or other forms of mental anguish or distress. In weighing these intangible injuries you may consider the fact that the Plaintiffs are claiming violations of rights that our society deems so important that they are enshrined in the Constitution. However, in so doing, you must keep in mind the facts of the case and the exact extent to which the decedent's constitutional rights were actually violated.

Memphis Community School District v. Stachura, 477 U.S. 299
(1986); Chatman v. Slagle, 107 F.3d 380 (6th Cir. 1997).

47

## PLAINTIFFS' JURY INSTRUCTION NO. 21

## <u>DAMAGES – VALUE OF CONSTITUTIONAL RIGHT</u>

Congress intended significant recompense when a constitutional violation caused the death of a victim. Damages for this type of injury are more difficult to measure than damages for a physical injury. There are no bills or other expenses by which you can judge how much compensation is appropriate for this type of injury. In one sense, no monetary value we place upon constitutional rights can measure their importance in our society or compensate a citizen adequately for their deprivation. However, just because these rights are not capable of precise evaluation does not mean that an appropriate monetary amount should not be awarded.

The precise value you place upon any constitutional right which you find was violated is within your discretion. This instruction includes the constitutional rights that you may consider, including freedom from unreasonable seizures. In determining this amount, you must keep in mind the facts of the case and the exact extent to which Danny Withers' constitutional rights were actually violated.

<u>Carey v. Piphus</u>, 435 U.S. 247; 254-255 (1978);
Federal Jury Practice and Instructions, 5th Edition, O'Malley, et al., § 165.70.

48

## PLAINTIFFS' JURY INSTRUCTION NO. 22

## <u>PUNITIVE DAMAGES</u>

If you find for the Plaintiffs, you may, but are not required to, assess punitive damages against Defendant Zola.  The purposes of punitive damages are to punish a defendant for his conduct and to serve as an example or warning to Defendant Zola and others not to engage in similar conduct in the future.

The Plaintiffs must prove by a preponderance of the evidence that punitive damages should be assessed against Defendant Zola.  You may assess punitive damages only if you find that Defendant Zola's conduct was malicious and/or in reckless disregard of Danny Withers' rights.  Conduct is malicious if it is accompanied by ill will or spite, or was done for the purpose of injuring Danny Withers.  Conduct is in reckless disregard of Danny Withers' rights if, under the circumstances, it reflects complete indifference to Danny Withers' safety or rights.

If your find that punitive damages are appropriate, then you must use sound reason in setting the amount of those damages.  Punitive damages, if any, should be in an amount sufficient to fulfill the purposes that I have described to you, but should not reflect bias, prejudice, or sympathy toward either/any party.  In determining the amount of any punitive damages, you should consider the following factors:

- the reprehensibility of Defendant Zola's conduct;

- the impact of Defendant Zola's conduct on Danny Withers and Plaintiffs;

- the likelihood that Defendant Zola would repeat his use of excessive force if an award of punitive damages is not made;

- the relationship of any award of punitive damages to the amount of actual harm Danny Withers and/or the Plaintiffs' suffered.

Seventh Circuit Federal Jury Instructions Civil 7.24 (2010)

## **SPECIAL INTERROGATORIES**

1. Do you find by a preponderance of the evidence that Defendant Daniel Zola proximately caused the death of Danny Withers on September 30, 2010?

   Yes      _____                    No      _____

2. Do you find by a preponderance of the evidence that Defendant Daniel Zola was acting under the color of State law at the time he shot and killed Danny Withers on September 30, 2010?

   Yes      _____                    No      _____

3. Do you find by a preponderance of the evidence that Defendant Daniel Zola, intentionally committed an act, under color of state law, that violated Danny Withers' Fourth Amendment constitutional right not to be subjected to excessive force?

   Yes      _____                    No      _____

4. Do you find by a preponderance of the evidence that Defendant Daniel Zola assaulted Danny Withers?

   Yes      _____                    No      _____

5. Do you find by a preponderance of the evidence that Defendant Daniel Zola committed a battery against Danny Withers?

   Yes      _____                    No      _____

6. Do you find that Defendant Daniel Zola' conduct was malicious and/or in reckless disregard for Danny Withers' constitutional rights?

   Yes      _____                    No      _____

7. Do you find that an official custom or policy of the Defendant City of Cleveland caused Danny Withers' constitutional rights to be violated?

   Yes      _____                    No      _____

8.  Do you find that the Defendant City of Cleveland violated Danny Withers'
    constitutional rights by failing to train and/or supervise its police officers?

    Yes  _____                                    No  _____

9.  Do you find by a preponderance of the evidence that Danny Withers and/or the
    Plaintiffs suffered damages as a direct and proximate result Defendant Daniel
    Zola's use of excessive force on Danny Withers?

    Yes  _____                              No  _____

10. Do you find by a preponderance of the evidence that Danny Withers and/or the
    Plaintiffs suffered damages as a direct and proximate result of Defendant Daniel
    Zola's assault of Danny Withers?

    Yes  _____                              No  _____

11. Do you find by a preponderance of the evidence that Danny Withers and/or the
    Plaintiffs suffered damages as a direct and proximate result of Defendant Daniel
    Zola's battery of Danny Withers?

    Yes  _____                              No  _____

12. Please enter the amount of compensatory damages that you find, by a
    preponderance of the evidence, Danny Withers or his estate suffered as a direct
    and proximate result of Defendant Daniel Zola's conduct?

    Amount         $_____

13. Please enter the amount of compensatory damages do you award to Danny
    Withers' next of kin, Dan Withers and LaVette Carr, for the losses they suffered
    as a consequence of the shooting death of their son, by Defendant, Daniel Zola?

    Amount         $_____

52

14. Please enter the amount of punitive damages that you award to Danny Withers or his estate as a consequence of Defendant Zola's conduct that you found to be malicious and/or in reckless disregard for Danny Withers' constitutional rights?

      Amount      $_____

15. Please enter the amount of compensatory damages that you find, by a preponderance of the evidence, Danny Withers or his estate suffered as a direct and proximate result of official policies or customs of the City of Cleveland?

      Amount      $_____

16. Please enter the amount of compensatory damages that you find, by a preponderance of the evidence, Danny Withers or his estate suffered as a direct and proximate result of the City of Cleveland failing to train and/or supervise its police officers?

      Amount      $_____

**JURORS' SIGNATURES**

_____          _____
        Jury Foreperson

_____          _____

_____          _____

_____          _____


        Date:  _____




**VIII.   ESTIMATED LENGTH OF TRIAL**

        Plaintiffs estimate that the length of the trial will be five (5) days.

WHEREFORE, the Plaintiffs respectfully submit their Trial Brief in the above captioned matter.

Respectfully Submitted,

/s/ Brian A. Murray
LARRY W. ZUKERMAN, Esq. (0029498)
BRIAN A. MURRAY, Esq. (0079741)
Zukerman, Daiker & Lear, Co., L.P.A.
3912 Prospect Ave. East
Cleveland, Ohio 44115
(216) 696-0900 telephone
lwz@zukerman-law.com
bam@zukerman-law.com
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the forgoing was filed electronically on July 29, 2018.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Brian A. Murray
Brian A. Murray, Esq. (0079741)