IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAN WITHERS, Individually and As Administrator of the Estate of Danny Withers, Deceased, | CASE NO. 1:11-CV-2004 |
| | JUDGE CHRISTOPHER BOYKO |
| Plaintiff, | |
| | **JOINT TRIAL BRIEF OF DEFENDANTS** |
| v. | |
| CITY OF CLEVELAND, et al., | |
| Defendants. | |

Defendants Detective Daniel Zola and the City of Cleveland jointly file their Defendants' trial brief in compliance with the Court's Civil Trial Order.

**I. STATEMENT OF FACTS**

On September 21, 2010 Danny Withers entered the Fifth/Third Bank at 3500 Lorain Avenue in Cleveland and after waiting in line approached teller Dennisse Rodriguez. Withers handed Rodriguez a note which read: "Put the money on the counter or I will shoot you. 20s 50s 100s." A terrified Rodriguez complied with the life threatening demand. Fingerprints and video quickly identified Withers as the criminal. Withers was well known to law enforcement with his prior convictions. A warrant was quickly issued for the arrest of Withers for the bank robbery.

On September 30, 2010 Cleveland Police Sergeant Thomas Shoulders and Detectives David Shapiro and Daniel Zola arrived at 1146 East 125th Street, Withers's home address, to serve the felony warrant and arrest Withers. The Officers knocked on the door and announced they were police with a warrant. A male voice asked from the upstairs whom they were looking for. After stating either "Danny" or "Kevin" the male voice became silent and the Officers did

1

not hear from him again.  Ida Withers eventually answered the door.  The Officers lawfully entered the Withers home.  Ida Withers informed the Officers that Withers lived on the third floor of the home.

The Officers began a meticulous and lengthy search for Withers starting with the third floor and working their way down.  During the search they continued to command Withers to show himself, let them know where he is, come out with his hands raised, and other commands intended to de-escalate the dangerous situation.

Finally the Officers entered the basement.  The basement was poorly lit.  Detective Zola had his duty weapon in his right hand and his flashlight in his left hand.  He held the flashlight in his left hand high and away from his body.  Zola's concern was if Withers decided to open fire, he would fire towards the flashlight thus he wanted the flashlight as far away from his head and torso as practicable.  Zola also did not "click" his flashlight on but instead lightly held the button "feathering" it because he was afraid the sound of the click would give away his position and cause Withers to fire at him.

After clearing most of the basement, the Officers prepared to search a large closet – large enough for an adult to easily stand up.  The Officers assumed a tactical formation with Shoulders set to open the closet door and Zola covering with his duty weapon.  Zola had his duty weapon in the low-ready position.   As Shoulders opened the door Withers stepped out of the closet and his right arm shot up.  Zola saw what he thought was a gun in Withers's hand.  Zola thought Withers had the advantage and would fire a shot that would kill him.  Zola fired a single shot and Withers fell back into the closet.  A screwdriver was recovered at Withers's feet.  Zola fired because he was in fear of his life, as any reasonable person in the same situation would be.  Withers died from the single round.

## II. APPLICABLE LAW

### A. Detective Zola was justified in using deadly force as the dangerous situation was entirely of Withers's own creation.

When assessing an excessive force claim the court must consider "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). While a number of factors go into the analysis, such as "the severity of the crime at issue [and] whether the suspect poses an immediate threat to the safety of the officer or others," *Id* at 396, "the ultimate question is whether the totality of the circumstances justifies a particular sort of seizure." *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006). The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

The Sixth Circuit has determined that a police officer's use of deadly force was not excessive and was objectively reasonable and, therefore, not a Fourth Amendment violation if the officer has probable cause to believe that the suspect poses a threat of severe physical harm to the officer or to others. *Untalan v. City of Lorain, et al.*, 430 F.3d 312, 314 (6th Cir. 2005). In further support of the proposition that a police officer under these circumstances is entitled to qualified immunity, the Sixth Circuit observed, "[a]lso irrelevant is the fact that the decedent was actually unarmed… the sad truth is that [the decedent's] actions alone could cause a reasonable officer to fear imminent and serious physical harm." *Reese v. Anderson*, 926 F.2d 494, 501 (6th Cir. 1991). See also *McLenagan v. Karnes*, 27 F.3d 1002, 1007 (4th Cir. 1994) "we do not think it wise to require a police officer, in all instances, to actually detect the presence of an object in a suspect's hand before firing on him." An officer need not see a weapon to presume that a

3

suspect may be reaching for or attempting to use a weapon. *Dudley v. Eden*, 260 F.3d 722 (6th Cir. 2001).

Under *Graham*, Zola's use of force was clearly justified. Withers was accused of a serious crime which included a threat to "blow the head off" the bank teller. He also had previous convictions including weapons convictions, which increases the fear of Withers responding to an arrest with deadly resistance. Both testimonies from the Officers about their subjective state of mind as well as an objective review of their actions show a "fear of imminent and serious physical harm." It is also without a doubt that Withers's "actions alone … cause[d] a reasonable officer to fear imminent and serious physical harm."

**B. Detective Zola is protected by qualified immunity.**

In evaluating whether an officer's conduct is reasonable, the court must pay "careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. at 399. Under the doctrine of qualified immunity, government officials performing discretionary functions are immune from suit unless the plaintiff shows the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The central purpose of affording public officials qualified immunity from suit is to protect them ‗from undue interference with their duties and from potentially disabling threats of liability.'" *Id.* 457 U.S. at 806. The *Graham* Court explained that a very important aspect to reviewing an officer's actions is that the review must be undertaken in the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Also, the Supreme Court has instructed that the "calculus of reasonableness must embody allowance for the fact that police officers are forced to make split second judgments‖ in circumstances that are tense,

uncertain and rapidly evolving— about the amount of force that is necessary in a particular situation." *Graham* at 396-397. Courts are to be careful not to "deny the practical difficulty of attempting to assess the suspect's dangerousness." *Tennessee v. Garner*, 417 U.S. 1, 20 (1985).

Qualified immunity operates in excessive-force cases "to protect officers from the sometimes hazy border between excessive and acceptable force." *Saucier, supra* 534 U.S. at 207 (*quoting Priester v. Riviera Beach,* 208 F.3d 919, 926-927 (11th Cir. 2000)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citations omitted). The evidence establishes that Detective Zola only used deadly force when he reasonably, even if mistakenly, believed Withers constituted a threat of immediate and serious physical harm to the Officers.

When a police officer invokes qualified immunity, the Sixth Circuit has repeatedly stressed that the ultimate burden of proof is on the plaintiff to show that an officer is not entitled to qualified immunity. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991); *Scott v. Clay County*, 205 F.3d 867, 874 n. 9 (6th Cir. 2000); See also *Barrett v. Steubenville City Schs*., 388 F.3d 967, 970 (6th Cir. 2004); *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992); *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999). Plaintiff cannot meet his requisite evidentiary burden and the evidence placed before the Court at trial will well establish the Defendant is well deserving of the protections of qualified immunity.

5

**C. Plaintiffs have not supported their *Monell* claims against the City.**

Plaintiffs' claims against the City are as follows: (1) failure to train and supervise employees; (2) supervisory liability; (3) official policy or custom and practice of municipality; (4) supervisor or municipality post-deprivation ratification; (5) state law wrongful death claim; (8) state law survivorship claim; and (9) state law parental loss of consortium claim. Am. Compl. at 16-25, *Withers, et al. v. City of Cleveland, et al.*, No. 1:11-cv-2004 (N.D. Ohio Apr. 23, 2012), ECF No 26.

The only evidence Plaintiffs have presented to support these claims against the City are the general opinions of their expert, Michael D. Lyman, PhD. *See generally*, Dr. Lyman's Report, *Withers, et al. v. City of Cleveland, et al.*, No. 1:11-cv-2004 (N.D. Ohio Apr. 23, 2012), ECF No 81. Without supporting evidence, Dr. Lyman opines that Defendant Detective Zola was improperly supervised and that "[t]op administrators and command staff within the Cleveland Police Department ratified the misconduct of Sergeant Thomas Shoulders, Zola and Shapiro by failing to hold them accountable for their actions that led to the improper use of deadly force against Danny Withers." *Id*. At 15. Shoulders and Shapiro, however, are no longer parties to this case.

Notably, Dr. Lyman does not provide any opinion regarding arrest warrant training or use of deadly force training provided to the members of the City's Division of police. He also does not provide opinions about the City's policies and procedures regarding the investigation or discipline of officers.

Because Plaintiffs attempt to support their claims with only the unsupported opinions of an expert witness, Plaintiffs do not meet their burden of proof with respect to their claims against the City of Cleveland.

Plaintiffs' claims against the City fail because Plaintiffs have failed to meet their burden of proof. In order to recover on their claims against the City, Plaintiffs bear the burden of proving, by a preponderance of the evidence, that the City of Cleveland itself caused the constitutional violation against Danny Withers. A municipality cannot be held liable for the unconstitutional actions of its employees under a theory of *respondeat superior*. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). Rather, a plaintiff seeking to establish municipality liability under § 1983 must "identify conduct properly attributable to the municipality itself." *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003) (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)).

The Sixth Circuit Court of Appeals has formulated a three-part test to determine municipal liability in § 1983 actions, which requires that "[t]o succeed on a failure to train or supervise claim [under a § 1983 theory], the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006); *Cabaniss v. City of Riverside*, 231 F. App'x 407, 416 (6th Cir. 2007). In order to make this showing, a plaintiff must "do more than point to something the city could have done to prevent the unfortunate incident." *Kahlich v. City of Grosse Pointe Farms*, 120 F. App'x 580, 585 (6th Cir. 2005) (citing *City of Canton*, 489 U.S. at 392 (citation omitted)).

With respect to the second prong of the test, a plaintiff "must show that the municipal action was taken with the requisite degree of culpability." *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003). "A showing of deliberate indifference requires a showing of something more

culpable . . . than a negligent failure to recognize [a] high risk of harm.ö *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 912 (6th Cir. 1995) (quoting *Black v. Indiana Area Sch. Dist.* 985 F.2d 707, 712-13 (3d Cir. 1993) (internal quotations omitted)). *See also*, *Lewis v. City of Irvine, Kentucky*, 899 F.2d 451, 455 (6th Cir. 1990) (stating that it does not suffice õto prove that an injury or accident could have been avoided if [the employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conductö).

Finally, a plaintiff õmust demonstrate a direct causal link between the municipal action and the deprivation of constitutional rights.ö *Cherrington*, 344 F.3d at 645 (quoting *Board of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 404). Therefore, Plaintiffs must demonstrate that deliberate, unconstitutional conduct of the City itself was the driving force behind the alleged injury. *Id.*

Quite simply, Plaintiffs have not provided any evidence to support their claims that the City has a custom, practice, or policy of failing to adequately train, supervise, and discipline its police officers, failing to adequately investigate allegations of excessive force, and failing to engage in corrective actions and/or discipline when faced with officers who have engaged in excessive force. In fact, the only evidence that Plaintiffs put forward to attempt to prove their claims against the City is the unsupported opinion of their expert witness stating that the City ratified the conduct of Detective Zola by not holding him õaccountableö for his actions against Danny Withers. The expertøs opinion did not discuss specific customs, practices, or policies of the City that demonstrate that the City engaged in specific conduct that inadequately trained, supervised, investigated, or disciplined its employees with deliberate indifference which ultimately resulted in the alleged unconstitutional conduct against Danny Withers. Plaintiffs have not provided a shred of evidence that the City of Cleveland itself caused the constitutional violation against Danny Withers.

Plaintiffs' claim that the City fails to train and supervise must fail because there is no evidence of a clear and persistent pattern of misconduct of the kind in this case. There is also no evidence of a clear and persistent pattern of misconduct of Cleveland police officers in general. Even if there was evidence of a pattern of misconduct by Detective Zola or other Cleveland police officers, there is no factual basis for asserting that the City knew or should have known that the alleged pattern of misconduct constituted a high risk of harm, and then deliberately ignored that risk. There is also no evidence that the City was deliberately indifferent in its training and supervision of its police officers.

The facts presented by Plaintiffs at trial simply do not demonstrate the existence of an unconstitutional policy, practice, or deliberate unconstitutional conduct on the part of the City. *Cabaniss v. City of Riverside*, 231 F. App'x 407, 416 (6th Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378 (1989) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable city 'policy.' *Monell* is not satisfied by a mere allegation that a training program represents a policy for which the city is responsible."). Even if this Court determines that Plaintiffs have met their burden to demonstrate that the City has deficiencies in training or supervision, Plaintiffs have provided no evidence that these deficiencies were the moving force behind the alleged violations of Withers' constitutional rights.

Plaintiffs attempt to circumvent this fatal flaw by citing to the Department of Justice Reports (DOJ Reports). The DOJ Reports are merely the summary of an investigation and offer no truth to the matters asserted. Moreover, the DOJ Reports cited are not timely. The first DOJ report was written in 2002 and was concluded in 2005, years before this incident, and the second DOJ Report was written in December 2014, years after this incident. The DOJ Reports, on their face,

do not and cannot establish the essential elements of Plaintiffs' *Monell* claims. That is, the DOJ Reports do not demonstrate (1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the "moving force" or direct causal link in the constitutional deprivation.

Plaintiffs ratification claim fails for the same reasons. Plaintiffs do not and cannot establish that the City ratified Defendant Zola's conduct causing the constitutional violation. Ratification under *Monell* requires that a local government "ratif[y] a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier*, 591 F.3d at 1250 (emphasis added). The mere fact that an officer was not reprimanded or provided with additional training cannot support a theory of ratification. *Morales v. Fry*, C12-2235-JCC, 2014 WL 1230344, at *14 (W.D. Wash. Mar. 25, 2014); *Clouthier*, 591 F.3d at 1253-54 (holding that a failure to discipline employees, without more, was insufficient to establish ratification). "Ratification . . . generally requires more than acquiescence." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), rev'd in part on other grounds sub nom. *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765 (2015). See also, *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) ("Ratification of a subordinate's action requires more than acquiescence-it requires affirmative approval of a particular decision made by a subordinate.") Plaintiffs do not offer any basis to support a claim for ratification other than the bare bones allegation that Detective Zola was not reprimanded.

The City is also entitled to Judgement as a matter of law on Plaintiffs' state law wrongful death, survivorship and parental loss of consortium claims. The City, like all Ohio political

subdivisions, is generally immune from tort claims concerning its performance of governmental functions. The parameters of municipal liability in the State of Ohio are governed by Ohio Revised Code Chapter 2744, the Political Subdivision Tort Liability Act. Section 2744.02(A)(1) provides the following:

> For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. **Except as provided in Division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.** R.C. 2744.02(A)(1) (emphasis added).

The Revised Code recognizes "[t]he provision or nonprovision of police . . . services or protection" as a governmental function for which a municipality is entitled to immunity. R.C. 2744.01. There is no question that the underlying incident that gave rise to Plaintiffs' state law claims falls within the provision or non-provision of police services. As such the City is immune from liability.

It is also well settled that the City's immunity may be defeated upon a showing that one of the five enumerated exceptions to immunity applies to this case. The limited exceptions to a municipalities immunity enumerated in the Revised Code are as follows: (1) negligent operation of motor vehicles by municipal employees; (2) negligent acts with respect to proprietary functions; (3) failure to keep public roads free from nuisance; (4) negligence of municipal employees within or on the grounds of public buildings; (5) when liability is expressly imposed upon a municipality by the Revised Code. R.C. 2744.02.

Plaintiffs have put forward no facts that support the application of any of these five exceptions, and, frankly, none apply. Because Plaintiffs have failed to meet their burden of proof

with respect to their state law claims against the City of Cleveland, the City will be moving for a Directed Verdict or Judgment as a Matter of Law.

### III. WITNESS LIST

In addition to the anticipated cross examination of all witnesses called to testify for Plaintiff's case in chief, Defendants reserve the right to call the following witnesses:

**Detective Daniel Zola** – Defendant in matter. Fact witness to the events in question.

**Detective David Shapiro** – Fact witness to the events in question.

**Retired Sergeant Thomas Shoulders** – Fact witness to the events in question.

**Dennisse Rodriguez** – Victim of Withers' bank robbery. Important fact witness helping the lay jury understand how dangerous a bank robber threatening your life is. Would have been a key witness in Withers' criminal trial. Her testimony will allow the jurors to consider the likelihood Withers would have ultimately been convicted of his crimes which would lead to substantial prison time, impacting any potential recovery of lost earnings.

**Director Michael McGrath** – Chief of Police at the time of the underlying incident and can testify to both the Cleveland Police policies, practices, and procedures at the time of the incident as well as how they have evolved. Will refute the sworn testimony of Dennis Daniels.

**Chief Calvin Williams** – Deputy Chief at the time of the underlying incident. Can testify to the Cleveland Police policies, practices, and procedures and interaction with the Department of Justice.

**Deputy Chief Joellen O'Neill**: Can testify to the Cleveland Police policies, practices, and procedures and interaction with the Department of Justice.

**Curtiss Jones** – Cuyahoga County Medical Examiner's Office trace evidence expert can authenticate DNA evidence gathered in the autopsy of Daniel Withers.

**Dr. Ron Martinelli** – Expert witness in police policy, practice, and procedure. Retained by Defendants for expert testimony.

One or more representatives from the CDP training section.

Other records custodians as may be necessary to authenticate records.

Other witnesses that may become necessary to impeach testimony.

## IV. PROPOSED EXHIBITS

Defendants reserve the right to place the following exhibits into evidence:

A: Photographs of the scene at 1146 East 125th Street

B: Videos of Withers's robbery at 5/3rd Bank

C: Photo of the note Withers used in 5/3rd Bank robbery

D: Cuyahoga County Medical Examiner's trace evidence report showing Withers's DNA on screwdriver recovered near him

E: Report given to Detectives prior to serving arrest warrant on Withers including background information as well as information on the crime in question

F: Video showing Officers serving an arrest warrant where they ultimately had to open fire on the suspect. Exhibit is offered for demonstrative purposes only to allow Dr. Martinelli to show to the jury the "reaction gap" in deadly force situations.

G. CDP Policies and procedures.

H. Cleveland Police Department's Use of Deadly Force Investigative Report

I. Cleveland Police Department's Internal Affairs Reports.

## V. EVIDENTIARY ISSUES

Other than issues identified in the parties motions *in limine*, Defendants anticipate only one minor issue; the transportation and testimony of Dennisse Rodriguez. Ms. Rodriguez is travelling from Florida and is constrained in the amount of time she can take off work. It may become necessary to take Ms. Rodriguez's testimony out of order, but Defendants will work with Ms. Rodriguez to avoid that.

## VI. ESTIMATED LENGTH OF TRIAL

Defendants estimate trial will last 4-5 days.

## VII. PROPOSED VOIR DIRE

Defendants attached proposed voir dire to this filing.

13

## VIII. PROPOSED JURY INSTRUCTIONS

The parties have agreed on Plaintiff's jury instructions 1, 3, 4, 5, 6, 7, and 9. Defendants object to Plaintiff's jury instructions 2, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 22. Defendants submitted additional proposed jury instructions with this filing.

## IX. SPECIAL INTERROGATORIES/VERDICT FORMS

Defendant respectfully requests that these forms be reserved for the final pre-trial as the instructions were not admitted jointly and the final version[s] will determine the interrogatories and verdict forms to be tendered to the jury.

## X. OPENING STATEMENT

Defendants' proposed opening statement is attached to this filing.

Respectfully submitted,

**BARBARA A. LANGHENRY (0038838)**
**Director of Law, City of Cleveland**

**By:** s/ John P. Bacevice, Jr.
**JOHN P. BACEVICE, JR. (0087306)**
Assistant Director of Law
**THOMAS J. KAISER (0014339)**
Chief Trial Counsel
**MARIAN KOUSAIE TONEY (0095831)**
Assistant Director of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Tel: (216) 664-2800
Fax: (216) 664-2663
Email: jbacevice@city.cleveland.oh.us
       tkaiser@city.cleveland.oh.us
       mtoney@city.cleveland.oh.us

*Attorneys for Defendant Detective Zola*

**By:** s/ Janeane Cappara
**JANEANE CAPPARA (0072031)**
Assistant Director of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Tel: (216) 664-2800
Fax: (216) 664-2663
Email: jcappara@city.cleveland.oh.us

*Attorney for Defendant City of Cleveland*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was filed electronically on July 30, 2018.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

                                            /s/ John P. Bacevice Jr.
                                            John P. Bacevice Jr. (0087306)
                                            Attorney for Defendant